W. J. Conner & Co. v. P. Z. Littlefield & Bro.

No. 3136.

**1. Ratification — Attachment Lien.** — A safe and some saw logs were turned over by an agent of Bell, an absent debtor, to Conner & Co., who held a mortgage upon "one steam saw mill" described, together with all its fixtures, "all the supplies I now have on hand or may have at the time of the foreclosure of this lien," etc. Littlefield & Co. caused the safe and saw logs to be seized under attachment. Subsequently Bell returned and in writing ratified the agent's act. The agent had also turned over to Conner & Co. all the mortgaged property. They claimed the saw logs and safe; and upon trial of the right of property, *held:*

1. The ratification by Bell of the agent's sale to Conner & Co. could not affect the rights of the attaching creditors, nor could Bell's admissions of authority affect the attachment.

2. There are no words in the mortgage which include the iron safe, nor does the word *supplies* include the lot of saw logs.

3. It appearing that in connection with the saw mill a commissary was kept, the word *supplies* must be applied to stores of food, etc., kept on hand for daily use.

4. Authority to turn over the mill and fixtures to the mortgagees would not include power to turn over property not mortgaged to them.

**2. Remarks of Trial Judge.** — Where the jury returned the only verdict they could properly have done remarks of the trial judge are immaterial. See example.

Appeal from Morris. Tried below before Hon. John L. Sheppard. The opinion states the facts.

*J. M. Moore,* for appellants.

*Talbot & Turner* and *J. F. Jones,* for appellees.

Gaines, Associate Justice.— The appellees caused a writ of attachment to be issued against the property of one W. J. Bell, and to be levied upon an iron safe and a parcel of saw logs. Appellants made affidavit and gave bond for a trial of the right of property under the statute.

Upon the trial the appellants sought to establish their right by virtue of an alleged sale made by one McEntyre as the agent of Bell. Bell was indebted to appellants, and had given them a mortgage upon nearly all of his property to secure the payment of existing and future indebtedness. The effects so mortgaged consisted of a saw mill and other things used in its operation. Bell went away, leaving McEntyre in charge. Appellants, after his departure, were advised by Bell by telegraph that he had gone to Mexico and were requested to keep the mill in operation. They called upon McEntyre to demand a settlement and he turned over the property in satisfaction of the mortgage. After the attachment had been levied Bell returned, and executed an instrument in writing to appellants ratifying McEntyre's action and acknowledging that he had authority to do what he had done.

Upon the trial Bell was examined as a witness by plaintiffs and testified

that he did not authorize McEntyre to sell the property to the claimants. Upon being asked upon cross-examination whether he had not signed a writing in which McEntyre's authority was acknowledged, he admitted that he had. Subsequently the written ratification was offered in evidence by the claimants, and upon objection was excluded by the court. The court did not err in excluding it. Bell had no power to ratify McEntyre's act so as to affect the plaintiffs' right after their levy had been made. Nor was his admission of McEntyre's authority evidence against them. When Bell admitted having executed the instrument acknowledging the alleged agent's authority, that ended the inquiry on that line, and the instrument was not admissible for the purpose of impeaching him.

The other questions in the case involve in some measure a construction of the claimants' mortgage. Did the mortgage include the property in controversy? The description of the effects conveyed by that instrument is as follows: "One steam saw mill situated about seven miles southwest from the town of Daingerfield, and known and named the 'Greyhound Saw Mill,' together with all its fixtures and appurtenances; seven yoke of oxen and two log-wagons and chains belonging thereto, said oxen and wagons being used in connection with said mill; all the supplies I now have on hand or may have at the time of the foreclosure of this lien; also all houses, mill sheds, or other buildings used or connected with said mill; also all lumber to be hereafter sawed at said mill." There are no words in the description which include the iron safe, and it is clear that the saw logs are not embraced unless they are included within the term "supplies." An ordinary nontechnical word should be taken in its most usual and ordinary sense as applied to the subject matter to which it relates, unless there be something in the context which shows that it was intended that a different meaning should be attached. "Supplies" (in the plural) has a fairly well defined meaning—that is to say, such stores of food, etc., as are kept on hand for daily use. See Webster's Dic. "Supply," 2. The evidence shows there was a commissary attached to the mill, and we think the word was intended to include the stores therein kept, as well as all forage for live stock and other farm produce and merchandise kept ordinarily on hand for operating the mill. We think that if it had been intended to include the saw logs they would have been specifically mentioned.

The case turned upon the question of McEntyre's authority to sell the property in payment of claimants' debt. The two witnesses who testified upon this point were Bell and McEntyre. Bell swore that he "never did authorize McEntyre to sell any part of" his "mill property to defendants or any one else," but that he authorized him to turn over the mortgaged property to Conner if he came in his absence. If this should be construed as authority to transfer the title of the effects covered by the

mortgage in the payment of the debts, it does not apply to the property in controversy, because it was not included in the mortgage. McEntyre testified that Bell told him when he left that he could run the mill or shut it down, or turn it over to Conner on the mortgage, just as he liked. Surely this gave no authority to turn over the property not included in the mortgage. After McEntyre, who was the last witness examined, had testified the counsel for the plaintiffs asked the court to instruct the jury to render a verdict in their favor, stating that the defendants had failed to prove a sale. Thereupon the court, in presence of the jury, used the following language: "If I was called upon to decide whether or not the witness J. M. McEntyre's evidence constituted a sale of said property, I would decide that it did not. But there is other evidence, and I will submit the matter to the jury." Appellants were not prejudiced by the remark. There being no sufficient evidence of McEntyre's authority to transfer the title of the property in controversy, the jury could properly have found no other verdict. The court might properly have given the requested instruction.

The last remark disposes of the fifth assignment of error, which complains that the court should have directed a finding for appellants.

The other assignments are mere propositions, which complain of no ruling of the court and require no consideration.

The judgment is affirmed.

*Affirmed.*