

# THE ATTORNEY GENERAL

# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

November 28, 1951

Hon. John H. Winters
Executive Director
State Department of Public Welfare
Austin, Texas

Opinion No. V-1357.

Re: Availability of funds appro-
priated to the Waco State
Home in the general appropria-
tion bill for the rental of
pasture land and for the pur-
chase of livestock for the bi-

Dear Sir:                    ennium ending August 31, 1953.

You have requested the opinion of this of-
fice relating to the authority of your department to
expend certain moneys appropriated to the Waco State
Home in the general appropriation bill for the bien-
nium ending August 31, 1953. Your specific questions
are as follows:

(1) Is there an appropriation to the
Waco State Home which may be expended for
the rental of 200 acres of pasture land?

(2) Is there an appropriation which
may be expended for the purchase of cows
and a bull for the dairy herd?

In 1951 the Legislature transferred the con-
trol and supervision of the Waco State Home from the
Board for State Hospitals and Special Schools to the
Department of Public Welfare. This act provides in
part:

"Sec. 5. The State Department of
Public Welfare is hereby directed to set
up a school and training program for the
children in the institution named in this
Act so as to enable the children to become
self-supporting through training and edu-
cation in accordance with the capability

of the individual child.  Such training program may be set up within the institution or it may require maintenance and support of the children in one of the State institutions of higher learning. The moneys appropriated for the maintenance and support of the institution may be used for this purpose in accordance with rules and regulations and limitations as prescribed by the State Department of Public Welfare.

"Sec. 6.  Nothing in this Act shall be construed to delimit the responsibilities of the institution named herein for the care of the children entrusted to it as provided in the General Statutes creating the institution and as provided in subsequent amendments prescribing the duties and responsibilities of the institution for the care of such children."  H.B. 540, Acts 52nd Leg., R.S. 1951, ch. 485, p. 860.

The following line item appropriations to the Waco State Home (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at p. 1273) are necessarily involved in a determination of the questions asked:

|  | "For the Years Ending August 31, 1952 | August 31, 1953 |
|---|---|---|
| 27.  Stationery, printing, gasoline, oil, grease, recreation, amusement, drugs, medical, hospital and laboratory supplies, clothing, dry goods, furnishings, feed, seed, groceries, meats, perishables, and miscellaneous supplies (out of General Revenue Funds) | $112,700.00 | $112,700.00 |

| | | | |
|---|---|---|---|
| 30. | Bond premiums, postage, telephone, telegraph, heat, light, water, power and travel expenses, out of local funds | 14,500.00 | 14,500.00 |
| 31. | Maintenance and repairs, out of local funds | 10,000.00 | 20,000.00 |
| 32. | Capital Outlay--Improvements and Equipment, out of local funds | 6,000.00 | 2,000.00 |
| 33. | Total--Out of Local Funds | 30,500.00 | 36,500.00" |

Both of your questions are related to the authority of the Home to acquire and maintain a dairy herd for the use and benefit of the children of the Home. The authority of eleemosynary institutions to maintain dairy herds or carry on other agricultural pursuits for the purpose of economical operation as well as providing constructive labor and vocational instruction for inmates of the institutions is well established. Att'y Gen. Ops. 0-2738 (1940) and 0-5439 (1943).

The Waco Home has maintained a dairy herd for several years for the benefit of the Home and since 1945 has rented the pasture land here involved. That the Legislature approved the maintenance of a dairy herd is shown by the fact that in 1949 it appropriated $10,000 to be expended for an addition to and equipment for a creamery. H.B. 321, Acts 51st Leg., R.S. 1949, ch. 553, p. 1068, at p. 1075. You state that on September 1, 1951, the Comptroller approved a warrant for a pasture rent installment and charged it to the appropriation in Line Item 27, supra. In prior years the Comptroller has approved the pasture rental warrants, although there has never been a specific "pasture rental" appropriation. This past departmental construction has persuasive value. Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762 (1948). However, you state the Comptroller is now of the opinion that there is no appropriation from which the pasture rental may be paid.

You state that the 200 acres of pasture land are necessary to maintain a herd which will supply sufficient milk and milk products for the normal requirements of the Home and that these products are necessary to the health and welfare of all the children in the Home.

In view of the above facts, we must ascertain if any of the line item appropriations to the Waco State Home may be expended for pasture rental.

Section 10(d) of the General Provisions following the appropriations to the various State hospitals and special schools provides:

"(d) All items herein appropriated to the several institutions including the Central Office, for bond premiums, post office box rent, land rental, postage, telephone, telegraph, heat, water, light, power, travel expenses, maintenance of structures and equipment, and capital outlay expenditures for improvements and equipment, shall be paid from the Board Local Fund. It is further provided that the items herein enumerated shall not be supplemented from any other funds appropriated in this Article, except as provided in Section 7(a) and (b) and Section 9, as provided in this Article." (Emphasis added.)

It will be noted that the appropriations out of local funds, Line Items 30, 31, 32, supra, do not include a "land rental" appropriation. Therefore, the rental expense cannot come from local funds. Unless Line Item 27, supra, makes provision for the payment of pasture rental, there is no appropriation from which pasture rental may be paid.

The only categories in Line Item 27 which might include pasture rental are "feed" and "miscellaneous supplies." "Pasturage" is a proper, but now obsolete, meaning for the noun "feed." Webster's New International Dictionary (2d Ed. 1938). Article 5502, V.C.S., gives livery stable owners a lien for "feed" and also a lien for "pasturage." However, this distinction is not controlling here, since it grew out

of the common-law theory that a livery stable owner did not have an agister's or "pasturage" lien. 3 C.J.S. 1118, Animals, Sec. 21. This statute was adopted to give a lien in either situation. In a situation other than for the enforcement of a statutory lien, which is to be strictly construed, the word "feed" might include "pasturage." El Paso Cattle Loan Co. of El Paso, Tex., v. Hunt, 228 Pac. 888 (N. Mex. Sup. 1924).

The other category, "miscellaneous supplies," is one of a very general nature, its inclusiveness depending primarily upon the history, fact situation, and type of business or operation in connection with which it is used. Conner v. Littlefield, 79 Tex. 76, 15 S.W. 217 (1890). Our Texas courts have approved the following definition of "supply": "One definition of 'supply' is to 'furnish with what is wanted.' Webster's Dictionary. Other definitions are: 'Available aggregate of things needed or demanded; . . . anything yielded or afforded to meet a want; the act of furnishing what is wanted.' 37 Cyc. 607." Clayton v. Bridgeport Mach. Co., 33 S.W.2d 787, 789 (Tex.Civ.App. 1930, error ref.). The provision is thus seen to be very broad and general, but it was intentionally made so by the Legislature so that the necessary items for the health, welfare, and schooling of the children in the Home could be purchased when the need for the items arose and such items were not within some other specific appropriation.

From the foregoing, we think the Legislature intended for the pasture rental to be paid from Line Item 27 funds. In view of the past history of the Waco State Home's maintenance of a dairy herd, of the creamery building and equipment appropriation, and the departmental construction which authorized the issuance of warrants for the payment of pasture rental, we can not hold that the Legislature has changed its policy upon the sole basis of its failure to make a specific "pasture rental" appropriation, there having been no prior practice so to specify.

The answer to your second question depends upon whether livestock may be purchased from either Line Item appropriations 31 or 32, supra. Section 10 (d), supra, of the General Provisions provides in part:

". . . maintenance of structures and equipment, and capital outlay expenditures for improvements and equipment, shall be paid from the Board Local Fund."

This definition more specifically enumerates the items for which Line Items 31 and 32 may be expended, and by its terms eliminates the possibility that livestock may be purchased from Line Item 31 maintenance funds. However, we are of the opinion that Line Item 32 funds may be expended for livestock necessary to develop a herd capable of producing the milk necessary for the requirements of the Home. The dairy herd is a permanent asset and therefore a capital asset of the Home, and the contemplated expenditures are, in our opinion, within the scope of the capital outlay appropriation.

## SUMMARY

The appropriation made to the Waco State Home by Line Item 27 (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at p. 1273) may be expended for "pasture rental," and the appropriation made by Line Item 32 (H.B. 426, supra, at p. 1273) may be expended for the purchase of livestock necessary to develop a dairy herd capable of supplying the needs of the Home.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

C. K. Richards
Trial & Appellate Division

Jesse P. Luton, Jr.
Reviewing Assistant

By E. Wayne Thode

E. Wayne Thode
Assistant

Charles D. Mathews
First Assistant

EWT:wb