The YOUNGSTOWN SHEET AND TUBE COMPANY, Appellant,

v.

Henry W. PENN et al., Appellees.

No. 10916.

Court of Civil Appeals of Texas. Austin.

March 7, 1962.

Rehearing Denied March 21, 1962.

**240**

L. L. James, Tyler, for appellant.

Morrison, Dittmar, Dahlgren & Kaine, San Antonio, for appellees.

HUGHES, Justice.

Our former opinion dismissing this appeal is withdrawn. We will determine its merits.

The appeal is from a summary judgment in favor of appellees, Henry W. Penn, J. K. Stark and J. P. Hale.

Appellant, The Youngstown Sheet and Tube Company, sued Texita Oil Company, alleging it to be a partnership composed of appellees and Gordon W. Johnson, I. A. McNab and Morris Cannan.[1]

The nature of the suit was upon a sworn account covering the period from March 14, 1958 to December 4, 1959, and for foreclosure of materialmen's liens on two oil and gas leases in Atascosa County.

Gordon W. Johnson and I. A. McNab answered alleging that Texita Oil Company was a partnership and that they were the partners composing it.

Appellees answered, under oath, and denied that they were partners, as alleged, and denied "that they were at any time material to this suit or otherwise engaged in a partnership or mining partnership with Texita Oil Company or were joint adventurers with" it in developing the leases in suit.

Appellees' motion for summary judgment was based upon two grounds, and supported by affidavits. The first ground was that it is conclusively shown that they and Texita were not partners and that there were no pleadings or facts upon which they could be held liable as partners since it is conclusively shown that the credit extended by appellant was extended exclusively to Texita and without any reliance upon the liability of appellees.

The second ground of the motion for summary judgment was that appellant failed to perfect a materialmen's lien, as to the interests owned by them in the leasehold estates, because of failure to state in the affidavit filed by it for the purpose of fixing such lien, as required by Art. 5476a, Vernon's Ann.Civ.St., that the notice required by Art. 5476c, V.A.C.S. was given to appellees, and because such notice was not in fact given.

■ Attached to the motion for summary judgment were several affidavits, one of which was made by Gordon W. Johnson who was a partner with I. A. McNab operating as Texita Oil Company from March, 1950 to December 1, 1958. Mr. Johnson stated that during such time Texita had no other partners, and that appellees were not partners and never held themselves out as partners. He also stated that all purchases made by Texita from appellant [2] were made exclusively on the credit of Texita. That from time to time appellant required Texita to execute notes secured by deeds of trust on interests owned by Texita in the leases

---

1. Morris Cannan was not before the Court when judgment was rendered.

2. Continental-Emsco Company is a division of The Youngstown Sheet and Tube Company and most of the transactions here were made in the name of Continental-Emsco Co.

in suit. Mr. Johnson further stated that Texita developed and operated the leases in suit under a written agreement which was attached to appellees' answer and referred to in his affidavit. Other statements were made by him to the manner in which appellant billed Texita for purchases made; the bankruptcy proceedings of Texita and the failure of appellant therein to claim that anyone but Texita was liable for its account, and the fact that appellant accepted dividends from the bankruptcy court without any notice or reference to appellees. Appellant's claim in the bankruptcy court was based, in part, upon the account sued on here.

Mr. Johnson also swore that no notice was given to any of appellees that appellant intended to file a materialmen's lien against their interests in the leases in suit.

Mr. Michael J. Kaine, an attorney for appellees, made an affidavit, attached to the motion for summary judgment which confirms, in many respects, the affidavit of Mr. Johnson.

Attached also to the motion for summary judgment were copies of two materialmen's lien affidavits made by the Treasurer of Continental-Emsco Company, relied upon by appellant to establish the liens claimed by it, which contain the statements that "Continental-Emsco Company has furnished, sold and delivered to Texita Oil Company, a partnership comprised of Gordon W. Johnson and I. A. McNab" materials etc.

The operating agreement was between "Texita Oil Company, a partnership composed of Gordon W. Johnson and I. A. McNab," called operator, and appellees, called non-operators. These parties owned all the working interest under an oil and gas lease on certain described lands. The agreement recites that "it is the desire of the parties hereto that operator shall be in charge of operations under" the lease. It provided that operator should have "exclusive charge, control and supervision of all operations of every kind" in the development and operation of the leases. It also provides that operator shall charge to a joint account all costs and expenses incurred by him under the agreement and that monthly statements should be made by him to non-operators who should pay, in accordance with the interest of each, the account within 15 days, and each non-operator granted operator a lien on his interest to secure the payment of such expenses.

The agreement provided that operator should not incur any item of expense in excess of $5,000.00 without the written approval of non-operators, with certain exceptions. It also provided that each party should have the right to receive in kind and separately to dispose of such parties' share of any minerals produced. We copy from the agreement as follows:

"10. LIABILITY OF PARTIES: The Joint Leases shall not be operated hereunder as a partnership venture, and the liability of the parties hereunder shall be several and not joint or collective. Each party shall be responsible only for his obligations as set out herein and shall be liable only for his proportionate share of the cost of operation hereunder."

The agreement further provides that it shall not constitute a partnership under Federal taxing laws or under any similar State laws.

Appellees J. K. Stark and J. P. Hale filed affidavits in support of the motions for summary judgment, both similar. We quote from the affidavit of Mr. Hale:

"Continental-Emsco Company billed all of the items upon which its suit is based directly to Texita Oil Company and did not send any of the invoices therefor to me and no inquiry was ever made of me by Continental-Emsco Company regarding any responsibility on my part for the payment of such debts incurred and owing by Texita Oil Company. That the materials, supplies, equipment and services upon which the

Plaintiff's suit is based were not ordered by me or any authorized agent, servant or employee of mine, and were not furnished to me by the Continental-Emsco Company as alleged in the Petition. That no demand was ever made upon me by Continental-Emsco Company for the payment of the debts which are made subject to this suit, or any part thereof, and no notice was ever given to me by Continental-Emsco Company that any lien was claimed or being asserted against my leasehold interest in the above lease. That during the existence of this operating agreement with Texita Oil Company, I was regularly submitted statements by Texita Oil Company for the payment of my proportionate share of ,costs of performing the contract, as provided in the operating agreement, all of which were paid by me to Texita Oil Company, including the costs covering the period in which the Plaintiff claims the indebtedness to it was incurred by Texita Oil Company. I do further deny that I have ever been engaged in a mining partnership, partnership, or joint venture with Texita Oil Company, I. A. McNab, or Gordon W. Johnson."

In opposition to the motion for summary judgment, Mr. C. L. Vickers, appellant's General Credit Manager, made an affidavit from which we quote:

"Soon after the said Texita Oil Company began the development and operation of said leases, for and on behalf of all the owners of each lease respectively, they applied for and was granted a line of credit by The Continental Supply Company and its successor Continental-Emsco Company, a Division of The Youngstown Sheet and Tube Company, for the purchase of supplies and equipment to be used in the development and operation of said leases.

"Affiant further says that when the said Texita Oil Company began the purchase of such supplies and equipment for said leases from The Continental Supply Company, the said The Continental Supply Company charged such supplies and equipment to the Texita Oil Company and to each and all of the other owners of the lease for which said material and supplies were being purchased. In each instance the Texita Oil Company, its duly authorized agents and representatives, would furnish the names of the other owners of the lease for which such material was being purchased. This procedure was followed until Texita Oil Company acting through Gordon W. Johnson, one of the partners, requested The Continental Supply Company to place all of said charges under one account as a matter of convenience. Thereafter, all charges for materials and supplies purchased by Texita Oil Company from The Continental Supply Company or from Continental-Emsco Company for use on the said leases, including the leases involved in this suit, were charged to Texita Oil Company but a separate record was kept by the said The Continental Supply Company and Continental-Emsco Company of the supplies and materials purchased for each lease so that if it became necessary or desirable the said The Continental Supply Company and/or Continental-Emsco Company could enforce the collection of their accounts for such materials and supplies against all the owners of said leases and could, if they so desired, file a statutory lien against the lease for which such material and supplies were delivered.

\* \* \* \* \* \*

"Affiant states that over a period of several years the Texita Oil Company offered and did execute certain notes payable to The Continental Supply Company and Continental-Emsco Company covering materials, equipment and supplies purchased for said leases, and further offered and did execute cer-

tain Deeds of Trust covering their interest in various leases securing said notes and executed Chattel Mortgage covering certain drilling equipment owned by Texita Oil Company to secure said debt, but in accepting the said notes and security, The Continental Supply Company and Continental-Emsco Company did not agree to accept said security in substitution or release of its rights against the other owners in said leases, and specifically provided in said notes that same did not in any way waive any lien rights existing in favor of The Continental Supply Company or Continental-Emsco Company by virtue of the laws of the State of Texas."

Mr. Vickers also stated that no officer of his company knew of the operating agreement between Texita and appellees, and further that appellant after 1957 would not have sold supplies to Texita solely on its credit, and that "when said credit was extended and said supplies were sold, affiant was looking to each and all of the owners of each lease for the payment for said supplies."

Mr. Herbert P. Dawkins, an assistant credit manager for appellant, made an affidavit similar in import to the affidavit of Mr. Vickers, but adding:

' "On or about the 30th day of October 1956, the Defendant, Henry W. Penn, in Affiant's presence, assured Mr. McNab that he would pay them at least $25,000.00 in time for Texita to send the check to The Continental Supply Company in time for it to be received during October."

Attached to the affidavit were several letters. One dated September 27, 1955, was from Texita to appellee Stark. This letter, very difficult to read, states the conditions upon which an interest in one of the leases in suit was sold to Mr. Stark. We cannot see its relevance here.

The second letter, May 8, 1957, is from Texita to Mr. Garson Reiner, a copy apparently going to appellee Penn. This letter discusses the account of Mr. Penn with Texita. It also refers to "these joint operations" between it and Mr. Reiner. We are not advised how this letter is binding on or admissible against Mr. Penn.

The third letter, September 27, 1955, is from Texita to, approved and accepted by appellee Penn. This letter relates to the purchase by Mr. Penn of an interest in one of the leases in suit. We find nothing in this letter relevant here.

The fourth letter is from Texita to Garson Reiner, dated July 8, 1957. Appellant quotes, in its brief, the following excerpt from this letter.

"It is understood and agreed that we will be the operator of the lease and that a joint operating agreement will be prepared and entered into between you and us, and the agreement is to be similar to the ones that we have in force and effect with you on the jointly owned Bishop, Hoover 'J', Hoover 'K', Hoover 'M' and Hoover 'N' Leases."

The last letter is from Texita, dated February 3, 1958 and is addressed to Working Interest Owners in the Shannon "A", Hoover "D" and Hoover "E" Leases. Appellant, in its brief, copies from such letter:

" * * * It is our most sincere desire to cooperate with all parties and to furnish the information pertinent to joint operations in which you are interested. However, you can readily see that it would not be practical to call up each of you individually and discuss our joint operations.

" * * * Again we would like to point out to you that we would appreciate your selecting either an individual or a committee for each of these three leases to represent all of the working interest owners and have this individual or committee to feel free to call upon us at any time in connection with any matters that pertain to the joint operation of these leases."

There is also an affidavit and supplemental affidavit made by Mr. L. L. James, attorney of record for appellant.

Mr. James states that the claim filed in the Texita bankruptcy proceedings, based on the accounts involved here, was a secured claim, and that in such proceedings the Referee in Bankruptcy was advised that appellant was attempting to collect its debt from others than the bankrupts.

Mr. James also set out in his affidavit the oral deposition testimony of Gordon W. Johnson given January 14, 1960. Mr. Johnson testified that in some instances appellant charged Texita and "some other names" for purchases made by Texita. He further testified:

"Q. Do you remember any particular instances of that, Mr. Johnson; where that happened?

"A. I would have to look back in old invoices to find particular names. It was quite confusing, and we finally asked Continental to set it all up in Texita.

"Q. Yes. Mr. Johnson, do you know whether or not the owners of those several leases respectively knew, during the time that Texita was developing and operating those several leases, that Texita was purchasing the equipment, material and supplies, and services, on open account?

"A. Some of them, I'm sure, did, but a lot of them I'm sure had no idea. There's no reason why they would know how purchases were being made. We would invoice them for what they owed us for their respective interests, and they would pay us direct, which is about the only way it could be handled."

In a supplemental affidavit Mr. James attaches a partial transcript of the testimony given by Gordon W. Johnson in a creditor's meeting in the matter of the Texita bankruptcy.

Mr. Johnson, in testifying, several times referred to the other interest holders in the leases as "partners." He explained the use of this word, and specifically denied the existence of a partnership between Texita and the other interest owners as shown by the following testimony contained in the transcript attached to the affidavit of Mr. James:

"Q. Well, now at the time of the petition in bankruptcy, the adjudication, did some or were some of those operators—I mean some of those owners indebted to Texita for operating costs?

"A. At that time, a few; not very many. It was down because we had not been operating or billing or incurring any indebtedness for some time, and, so, we didn't have a big backlog.

"Q. In other words, Mr. Johnson, the relation existing between Texita and these other owners, generally speaking, is simply just the ordinary mining partnership, wasn't that what you would call it so far as you know?

"A. Well, as far as I know, it would be just the ordinary joint owner-operator agreement.

\* \* \* \* \* \*

"Q. When you speak of partners, you speak of other working interest holders—

"A. Yes, sir.

"Q. \* \* \* other than Texita on each and every lease?

"A. That's right; 'partners' is used as a loose term. They are not actually partners but interest holders in these particular leases."

Appellees rely principally upon the case of United States Truck Lines v. Texaco, Inc., 337 S.W.2d 497, Eastland Civ.App., writ ref., to sustain the judgment insofar as it denied the existence of a partnership

between Texita and themselves and their resultant personal liability.

We are of the opinion that this decision, on this question, is controlling even though it is distinguishable in at least two respects from this case. There the Court only sustained a fact finding that no partnership existed. Here the question presented is one of law. There the operating agreement contained the provision: "It is not the intention of the parties * * * that this contract is made for or is intended for the benefit of any third person." No similar provision is found in the operating agreement in suit.

The basic provisions of the operating agreement in United States Truck Lines are present here. These are, exclusive control of development and operations by operator (Texita) and its duty to make required purchases of supplies etc., several, not joint, liability of the parties and denial of a partnership relationship.

We also note that the accounting procedures in that case are very similar to those set out in the present operating agreement.

■ Construction of the operating agreement, as presented, is a question of law. We hold, in accordance with the opinion in United States Truck Lines and cases cited in it, that the agreement in suit does not constitute a partnership relationship between the operator, Texita, and the interest holders, appellees, for the reason that it does not establish joint operation of the leases nor mutual agency of the parties.

We are also of the opinion that there was no other evidence sufficient to sustain a finding of partnership as claimed by appellant.

Mr. Gordon W. Johnson explained that his reference to appellees as "partners" was "loose" terminology. Without this explanation, the evidence would still be lacking in probative force. In law, a partnership has legal significance and is created only by the presence of certain facts, the existence of which are not here shown. The legal conclusion of Mr. Johnson, fully dissipated by him, was no evidence of the asserted partnership.

The same result attaches to statements made by officers of the appellant company to the effect that it would not sell to Texita solely on its credit and that it was looking to interest owners for payment of supplies purchased by Texita.

These statements of appellant's attitude and thinking are purely subjective. An agreement cannot be made solely by unilateral mental process. Unless appellees in some manner indicated their assent to appellant's unexpressed thoughts, there could be no agreement between them.

It is wholly immaterial that appellant did not know of the operating agreement. Appellant sold to Texita knowing that it was a partnership composed only of Johnson and McNab. It would be appellant's good fortune if other partners were found. It cannot complain of its bad fortune in failing to uncover additional partners.

The statement of Mr. Dawkins that appellee Penn told Texita that he would pay it $25,000.00 in order that payment could be made by Texita to appellant merely confirms the manner in which the parties operated. Penn's obligation was to Texita. Texita's obligation was to appellant. No kind of estoppel is predicated on this promise of Mr. Penn's and could not be since it is not shown that this payment was not made as promised.

There is a complete absence of evidence upon which an estoppel in favor of appellant could be based. Appellees did nothing and said nothing to estop them. Nor did they, dutifully, fail to act or speak.

■ The only remaining point is as to the validity of the materialmen's liens claimed by appellant against the leasehold interests of appellees.

Appellant seeks to establish a lien under Art. 5473, V.A.C.S. This article provides that any person who shall "under contract" with the owner of any mineral interest furnish materials used in developing and maintaining development of such mineral interest shall have a lien on the whole of such mineral interest.

In Bethlehem Supply Corp. v. Wotola Royalty Corp., 140 Tex. 9, 165 S.W.2d 443, it was held that " * * * it is the settled law of this State that the lien accorded by Article 5473 extends only to the property of the person under whose auspices the labor or material is furnished; it does not authorize the fixing of liens upon the property of third persons. Thus, if labor, supplies, machinery, or materials are furnished to a leaseholder, the lien accorded by Article 5473 does not attach to the underlying fee title to the land."

The affidavit which appellant filed to fix its lien recites that it "has furnished, sold and delivered to Texita Oil Company, a partnership comprised of Gordon W. Johnson and I. A. McNab" certain supplies, etc.

This affidavit and other evidence in the records conclusively show that appellant had no contract with appellees to furnish them the supplies etc. involved in this suit. Appellant, therefore, had no right to a lien against appellees' leasehold interests under Art. 5473.

Appellant has points directed to the insufficiency, in some respects, of the affidavit supporting the motion for summary judgment. We need not discuss these points in detail for the reason that the material facts upon which this decision is based are not subject to the objections made to the affidavits.

The operating agreement while not attached to the affidavit of Mr. Johnson was attached to the current answer of appellees. It was before the Court and the effect of it has been the principal question argued on this appeal. The affidavit of Mr. Johnson in support of the motion for summary judgment referred to such agreement as being attached to the original answer of appellees "which is made a part hereof by reference as if fully rewritten herein." This was a sufficient adoption under Rule 58, Texas Rules Civil Procedure.

The judgment of the Trial Court is affirmed.

Affirmed.