**ENERGY–AGRI PRODUCTS, INC., Appellant,**

v.

**EISENMAN CHEMICAL COMPANY, INC., Appellee.**

No. 07–85–0259–CV.

Court of Appeals of Texas, Amarillo.

June 25, 1986.

Robert L. Finney, Warner & Finney, Pampa, for appellant.

David H. Thomas, III, Morris, Moore, Dalrymple, Moss & Dyson, Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

The question in this appeal from a bench trial judgment is whether, as the trial court decreed, Energy-Agri Products, Inc., a mineral property owner, is liable to and its property subject to a lien by Eisenman Chemical Company, Inc., a mineral subcontractor, for payment of Eisenman's claim related to mineral activities performed on Energy-Agri's property at the request of the mineral contractor, who was paid in full by Energy-Agri without notice of Eisenman's claim. The answer is a negative, requiring a reversal and rendition.

The record reveals by stipulated facts and unchallenged exhibits that Energy-Agri owned a leasehold mineral estate, denominated the Dunn lease, in Moore County. Energy-Agri contracted with Key Mud Service, Co. a business of John R. Laney

and wife, Adrian Laney, for Key to furnish labor, materials and supplies for mud work, which totaled $15,893.21, on the Dunn lease. Between February 2 and 12 of 1984, and at the request of John R. Laney on behalf of Key, who had a contractual relationship with Eisenman, Eisenman furnished and hauled mud and chemicals in the total amount of $7,973.37 that were used in Energy-Agri's drilling and completion of two wells on the Dunn lease.

Key presented Energy-Agri with invoices totaling $15,893.21, including invoices in the sum of $7,973.37 for work and materials furnished by Eisenman. On February 14 and March 15 of 1984, Energy-Agri paid Key the total of $15,893.21, but Key did not pay Eisenman.

On the following July 31, Eisenman served notice on Energy-Agri, and then on August 10, filed its affidavit for contractor's lien on Energy-Agri's leasehold mineral estate based on Eisenman's claim against Key for $7,973.37. Thereafter on September 6, Eisenman initiated litigation against Energy-Agri. Eisenman alleged that because Key failed to pay the $7,973.37 owed, Eisenman was entitled by chapter 56 of the Texas Property Code[1] to perfect its claim by perfecting a lien on Energy-Agri's leasehold estate and to recover from Energy-Agri the $7,973.37 Key owed Eisenman plus reasonable attorney's fees.

Energy-Agri initially answered with a general denial. Then, with leave of court, Energy-Agri joined the Laneys, d/b/a Key Mud Service, alleging that if it be adjudged liable to Eisenman in any amount, it should recover from Key that amount with interest and attorney's fees.[2]

On July 23, 1985, the trial court signed a judgment decreeing that Eisenman recover from Energy-Agri the sum of $7,973.37,

plus $2,657.79 for reasonable attorney's fees, with interest, and have foreclosure of its lien on Energy-Agri's ownership interest in the Dunn lease. The judgment further decreed that Energy-Agri recover from the defaulting Laneys, d/b/a Key Mud Service, the sum of $7,973.37, plus $2,657.79 for attorney's fees, with interest.

Energy-Agri pursues its appeal with two points of error to present a central contention. The contention is that the trial court erred in rendering the judgment imposing liability and a lien, with its foreclosure, in view of sections 56.043 and 56.006 of the Property Code.

Chapter 56 is the statutory law which gives a mineral contractor or subcontractor a lien, and provides for its establishment, against mineral property to secure payment for labor or services related to mineral activities. Secs. 56.001–56.045. Long ago, it was determined that the statutory law is a special one and exclusive in the sense that persons entitled to liens thereunder are not entitled to liens provided by other statutes. *Ball v. Davis*, 118 Tex. 534, 18 S.W.2d 1063, 1065–66 (1929).

Although the chapter provides for the lien, its section 56.006, the predicate for Energy-Agri's second point of error, specifies that:

An owner of land or a leasehold may not be subjected to liability under this chapter greater than the amount agreed to be paid in the contract for furnishing material or performing labor.

And section 56.043, upon which Energy-Agri premises its first point, is in this language:

A property owner who is served with a mineral subcontractor's notice may withhold payment to the contractor in the amount claimed until the debt on which the lien is based is settled or determined

---

1. Any subsequent citation of a chapter or a section is a reference to that chapter or section of the Texas Property Code Annotated (Vernon 1984).

2. While this litigation was pending in September of 1984, Eisenman sued the Laneys, d/b/a Key Mud Service, in another district court to

recover $40,536.03 on a verified account, which included the $7,973.37 made the subject of its action against Energy-Agri. On October 10, a default judgment was rendered, decreeing that Eisenman recover from the Laneys, d/b/a Key Mud Service, the $40,536.03, together with interest of $5,113.37 and attorney's fees of $13,500.

to be not owed. The owner is not liable to the subcontractor for more than the amount that the owner owes the original contractor when the notice is received. In that connection, the record is conclusive that Energy-Agri, the mineral property owner, had paid Key, the mineral contractor, the full amount owed under their contract before it had notice that Eisenman, the mineral subcontractor, had not been paid by Key the claimed amount of $7,973.37 on which Eisenman based its lien. Consequently, as Eisenman concedes, Energy-Agri is not liable to Eisenman for any sum of the amount Key owes Eisenman.

Its nonliability, Energy-Agri argues, determines that its mineral property is not subject to a lien by Eisenman. To hold otherwise, it is urged, would disregard the rights afforded by chapter 56 to a dutiful mineral owner who has timely paid his own contractor without notice of any claim under a contract to which the owner is not privy.

But, Eisenman counters, under chapter 56, personal liability and lien are separate and distinct legal terms and concepts. Thus, Eisenman asserts, to deny the subcontractor his lien and its foreclosure merely because the owner is relieved of personal liability by fully paying his contractor before notice is required to be given would render ineffective the lien specifically authorized by chapter 56.

The question whether chapter 56 allows a subcontractor, who has not been paid by the contractor, a lien on the mineral property of the owner, who has paid his contractor without notice of the subcontractor's claim, is a novel one not directly addressed by a provision of the chapter nor by case authority. The answer, though, is not dictated by the equitable situations envisioned and advanced by the parties, but by the proper interpretation of chapter 56 in light of established legal principles.

Chapter 56 is the statutory scheme for impounding funds in the hands of the mineral property owner, who owes those funds to his contractor for mineral activities by the contractor or subcontractor, through the imposition of a lien. Section 56.002. The lien provided does not create an original indebtedness; rather, the lien is subordinate to the terms of the contract between the owner and his contractor. This obtains because the owner cannot be liable to the contractor for more than their contract price, section 56.006, and he cannot be liable to a subcontractor for more than the amount he owes his contractor at the time he is served with notice of the subcontractor's claim. Section 56.043.

As a result, the owner is liable to a subcontractor only to the extent that he is liable to his contractor; thus, the right to the enforcement of the lien depends upon the state of the account between the owner and his contractor, and not upon the condition of the account between the contractor and his subcontractor, when the owner receives notice of the claim. It follows, as a necessary corollary, that if the owner has paid his contractor in full before notice of the subcontractor's claim is received, then the owner is not liable, and his property is not subject to the lien afforded by chapter 56, for payment of the subcontractor's claim. *Accord, Lonergan v. San Antonio Loan & Trust Co.,* 101 Tex. 63, 104 S.W. 1061, 1069 (1907).

Therefore, the judgment being erroneous as Energy-Agri contends in its two points of error, the points are sustained. As a consequence, the judgment must be reversed and a correct judgment rendered. Tex.R.Civ.Pro. 434.

Accordingly, the trial court's judgment is reversed, and judgment is here rendered that Eisenman Chemical Company, Inc. take nothing by its cause of action asserted against Energy-Agri Products, Inc., and that Energy-Agri Products, Inc. take nothing by its cross-action asserted against John R. Laney and wife, Adrian Laney, d/b/a Key Mud Service. Costs are taxed against Eisenman Chemical Company, Inc.