Fuston McCARTY, et al., Appellants,

v.

HALLIBURTON COMPANY, et
al., Appellees.

No. 11–86–095–CV.

Court of Appeals of Texas,
Eastland.

Feb. 26, 1987.

Rehearing Denied March 26, 1987.

Donald M. Hunt, Carr, Evans, Fouts &
Hunt, Lubbock, for appellants.

Beverly Tarpley, Scarborough, Black,
Tarpley & Scarborough, Abilene, Kerwin B.
Stephens, Stephens & Crawford, Graham,
Roy G. Scudday, Fielder & Scudday, Lock-
hart, Charles L. Black, Wagstaff, Harrell,
Alvis, Stubbeman, Seamster & Longacre,
Abilene, for appellees.

## OPINION

DICKENSON, Justice.

Halliburton Company and Colorado City
Tank Rental Company, Inc. sued Max Wal-
den Production, Inc. for a money judgment
for goods furnished and services rendered
in connection with the drilling and comple-
tion of certain oil wells, and they also

sought foreclosure of mineral liens on all of the leasehold interests in the land [including not only the interest owned by the operator, Max Walden Production, Inc., but also the interests owned by its assignees, investors who were nonoperator owners of portions of the leasehold estate]. After a nonjury trial, the trial court rendered judgment for Halliburton against Max Walden Production, Inc. in the sum of $130,926.78 plus attorney's fees of $26,185.35 and prejudgment interest in the sum of $48,951.27 [with Max Walden being adjudged jointly and severally liable on his personal guaranty to Halliburton in the sum of $150,000]; the trial court also rendered judgment for Tank Rental against Max Walden Production, Inc. in the sum of $6,900.41 plus attorney's fees of $2,200 and prejudgment interest in the sum of $1,421.28; and the trial court further rendered judgment for foreclosure of two mineral property liens.[1] The investors[2] appeal insofar as the judgment forecloses liens which would pass title of the entire leasehold estate free of their interests. We affirm.

Appellants present 14 points of error. They argue that the trial court erred: (1) in finding that appellees had no notice of the interest of investors or the development of separate units; (2–6) in rendering a foreclosure judgment because appellees were subcontractors who failed to give notice to the investors; (7–10) in rendering a single unit foreclosure because the property was developed as five separate units; (11) in foreclosing against the investors because

appellees were entitled to a lien only against the operator with which they dealt; (12–13) in foreclosing Tank Rental's lien based on a single contract for mineral activities; and (14) in foreclosing the attorney's fees liens against the investors because appellees never contracted with the investors. All points of error have been considered, and each is overruled.

The trial court made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. For a period beginning November 6, 1981, and ending July 26, 1982, C–C Tank furnished frac tanks to Walden, Inc.

2. The frac tanks were furnished by C–C Tank pursuant to a single contract with Walden, Inc.

3. The frac tanks were used by Walden, Inc. in the drilling, completing and operating of oil wells on the North ½ of Section 46, and 58.5 acres of Section 47, Block No. 28, Tsp. 1 North, T & P Ry. Co. Surveys, Mitchell County, Texas (Whiteside Lease).

4. Walden, Inc. was the owner of the oil and gas leasehold on the Whiteside Lease at the time C–C Tank furnished the frac tanks to Walden, Inc.

5. C–C Tank was a mineral contractor in regard to the furnishing of the frac tanks to Walden, Inc. on the Whiteside Lease.

---

1. The mineral property liens affect seven oil, gas, and mineral leases which were executed in favor of Max Walden Production, Inc. covering two adjacent tracts of land in Mitchell County from the surface down to 3600 feet beneath the surface. Halliburton and Tank Rental are to share in the proceeds of the sale on a pro rata basis, except for the three investors whose interests are subject to Halliburton's lien but not to Tank Rental's lien. Halliburton's lien was effective as to $108,449.74 (not the entire $130,-926.78) plus interest of $40,828.52 (not $48,-951.27), and attorney's fees of $21,689.94 (not $26,185.35). Tank Company's lien was effective as to its total debt plus interest and attorney's fees.

2. Fuston McCarty purchased an undivided 1/64th working interest in a portion of the lease, and he conveyed half of that interest to his children,

Jamie McCarty and Kenny McCarty. The trial court's judgment finds that the McCartys' interests are subject to Halliburton's lien but not to Tank Rental's lien. The other investors were held subject to both liens, and their names are: Thomas, McPheron & Morgan, a partnership; James Allen Ross; Ernest L. Williams; Felix Vasquez; Committee for Recovery, an unincorporated trust; Woodrow Weaver; Hazel Marshall; Ruth Dorsey; George Harlan; Jim Jenkins; Toni Jenkins; Robert H. Rhode; Carmen Rhode; John Hughes; Francis Hackney, Independent Executrix of the Estate of D.W. Hackney; Wayne Pierce; Pierce & McPhaul, Inc.; Westbrook Pump & Supply; Bessie Pickens; Max Walden; Darlow Oil Field Services, Inc.; Mueller Power Tong Service, Inc.; and Southcorp Energy Development, Inc.

6. C–C Tank never had actual notice, express or implied, of the equitable ownership in the Whiteside Lease of the Defendant Investors.

7. C–C Tank never had actual notice, express or implied, that the Whiteside Lease was being subdivided by Walden, Inc.

8. The reasonable value for the provision of the frac tanks by C–C Tank to Walden, Inc. for use on the Whiteside Lease was $6,900.41.

9. C–C Tank had a mineral contractor's lien against the Whiteside Lease which attached to said lease on November 6, 1981.

10. C–C Tank timely filed its mineral contractor's lien on August 10, 1982.

11. C–C Tank's mineral contractor's lien was prior [to] the assignments from Walden, Inc. to the Defendant Investors except for the assignments to Defendant Investors Fuston McCarty, Jamie McCarty, and Kenny McCarty.

12. C–C Tank's mineral contractor's lien is on equal footing with Halliburton's mineral contractor's lien against the Whiteside Lease.

13. The interest on the amount owed C–C Tank to the date of Judgment is $1,571.14. [sic]

14. The reasonable costs of attorney's fees incurred by C–C Tank in collecting the $6,900.41 is $2,200.00.

15. Halliburton Company provided certain goods and services to Walden, Inc. for the drilling, completing, and maintaining of oil and gas wells.

16. The charges for the goods and services provided on leases of Walden, Inc., are in the principal amount plus interest up to the date of hearing, as follows:

| Identification | Principal | Interest | Total |
| --- | --- | --- | --- |
| # E–2 Barber | $ 12,836.72 | $ 5,021.71 | $ 17,858.43 |
| Whiteside Lease | 108,449.74 | 40,828.52 | 149,278.26 |
| Dietz-Hazel #1 | 1,078.05 | 387.84 | 1,465.89 |
| Hazel-Dietz #3 | 8,562.27 | 2,713.20 | 11,275.47 |
| TOTALS | $130,926.78 | $48,951.27 | $179,878.05 |

17. The charges for the goods and services were agreed upon by Walden, Inc. and Halliburton Company and are usual and customary charges.

18. The goods and services provided by Halliburton Company with reference to the Whiteside Lease were on the following described property, being the North ½ of Section 46, and 58.5 acres of Section 47, Block No. 28, Tsp. 1 North, T & P Ry. Co. Surveys, Mitchell County, Texas (hereinafter "Whiteside Lease", including the leases described in the Judgment).

19. The goods and services provided on the Whiteside Lease were provided from September 24, 1981 through January 8, 1982 under a single contract, as no lapse in services occurred over a period of six months.

20. At the times the services were rendered, Walden, Inc. was a mineral property owner of the Whiteside Lease.

21. Halliburton Company was a mineral contractor in regard to the furnishing of goods and services to Walden, Inc. on the Whiteside Lease.

22. Halliburton Company duly and timely filed a statement of lien claim in regard to the goods and services provided on the Whiteside Lease.

23. Halliburton had no notice, actual or implied, of the ownership interest of the Investor or Defaulting Defendants or Bessie Pickens or Wayne Pierce.

24. Halliburton believed and had cause to believe, that the Whiteside Lease was being developed as a unit.

25. Halliburton Company had no notice, actual or implied, that the Whiteside Lease was not being operated as a unit.

26. The Whiteside Lease was being operated as a unit.

27. Halliburton's mineral contractors' lien was prior to the assignments from Walden, Inc. to Defendants claiming an interest in the Whiteside Lease.

28. Max Walden executed a personal guaranty to Halliburton Company of the account of Walden, Inc. guaranteeing payment of Walden, Inc.'s account up to the sum of $150,000.00.

29. Authorized agents for Walden, Inc. executed work orders for the goods and services provided by Halliburton in which Walden, Inc. agreed to pay twenty per cent of the principal amount due as attorney's fees for collection of the account and for payment of up to eighteen percent interest on past due accounts.

30. Halliburton Company charged Walden, Inc. ten percent interest on past due accounts as authorized by the contracts.

31. Twenty percent of the principal balance due is $26,185.35, which amount constitutes a reasonable attorney's fee.

32. Twenty percent of the principal balance due for goods and services provided by Halliburton Company on the Whiteside Lease is $21,689.94, which amount constitutes a reasonable attorney's fee.

33. Interest accrued to the date of hearing on the charges of Halliburton Company on the Whiteside Lease is $40,828.52.

## CONCLUSIONS OF LAW

1. Defendant Walden, Inc. was indebted to C–C Tank for the sum of $6,900.41.

2. C–C Tank's mineral contractor's lien was properly perfected against the entire Whiteside Lease.

3. C–C Tank is entitled to foreclose its lien against the entire Whiteside Lease except for that interest owned by Fuston McCarty, Jamie McCarty, and Kenny McCarty, in the total amount of $10,671.55.

4. Walden, Inc. is indebted to Halliburton in the sum of $130,926.78, plus interest in the amount of $48,951.27 through October 15, 1985, which shall accrue on the principal sum at the rate of ten percent (10%) from the date of the hearing until paid.

5. Max Walden is indebted to Halliburton Company in the amount of $150,000.00 on his personal guaranty.

6. Halliburton Company duly and timely perfected its mineral contractor's lien against the interest of Walden, Inc. in the Whiteside Lease.

7. The interest of all Defendants in the Whiteside Lease is subject to Halliburton's lien.

8. Halliburton Company is entitled to foreclose its lien on the Whiteside Lease to the extent of the amount of principal, plus interest, plus attorney's fees against the interest of Walden, Inc., free and clear the interest of claims of all Defendants (except CC Tank).

9. Halliburton Company had no actual or constructive notice of any equitable interest of the Defendants which would preclude it from asserting its lien as to their interest.

The trial court's findings of fact have the same force and effect as a jury's verdict upon special issues. If supported by evidence of probative value, they will not be disturbed on appeal unless they are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong. *Jackson v. McKenney*, 602 S.W.2d 124 at 126 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.); 4 McDONALD, TEXAS CIVIL PRACTICE sec. 16.05 (rev. 1984).

The operator secured oil, gas, and mineral leases on July 31, 1981, which covered the surface and a portion of the mineral interests, but the leases were not filed for record until March 9, 1983. Max Walden furnished Halliburton a copy of an unrecorded lease which appeared to cover the surface and all of the minerals on the land where the services were performed. Halliburton's lien was filed July 8, 1982, and Tank Rental's lien was filed August 10, 1982. At the time appellees furnished material, provided services, and perfected their mineral liens, the only assignments which had been placed of record involved the McCartys' 1/64th interest. Halliburton notified the McCartys, but Tank Rental did not notify them. After oil was discovered, the operator had the title examined and learned of the outstanding, unleased mineral interests. The leases which were then purchased were not filed for record until 1983.

There is no claim that the investors are personally liable for the goods furnished and services rendered. See and compare *Energy Fund of America, Inc. v. G.E.T. Service Company*, 610 S.W.2d 833 (Tex. Civ.App.—Eastland 1980), *aff'd in part and rev'd in part on other grounds sub. nom. Ayco Development Corporation v. G.E.T. Service Company*, 616 S.W.2d 184 (Tex.1981).

■ We agree with the trial court that, since the assignments to the investors [other than the McCartys] had not been recorded, appellees were not charged with constructive notice of these interests. The trial court resolved the disputed fact issue as to actual notice, and there is evidence to support the findings that appellees did not have actual notice of the investors' interests. Further, the investors were not in actual possession of the oil, gas, and mineral leasehold estate. The only one in possession of the leasehold estate was the operator, Max Walden Production, Inc., and both appellees furnished the operator with actual notice at the time their liens were filed. See TEX.PROP.CODE ANN. sec. 56.001 through 56.045 (Vernon 1984). While this Code did not become effective until January 1, 1984, it was a nonsubstantive revision of the prior statutes involving mineral liens.

■ Halliburton and Tank Rental were "mineral contractors" under the definitions found in Section 56.001 [former Articles 5473 and 5474], and Section 56.002 [former Articles 5473 and 5474] gives each of them a lien to secure payment for their services. Section 56.003 [former Article 5473] makes it clear the leasehold estate and the oil wells and equipment are subject to these liens. Section 56.005 [former Article 5476b] provides all of the services "are considered to be furnished under a single contract" if there is less than six months between the dates the material or services are furnished.

■ Section 56.006 [former Article 5478] provides that the owner of a leasehold may not be subjected to liability greater than the amount provided in the contract. The contracts before us provided for interest and attorney's fees in the event of default, and the assignments of interests in the leasehold were made [except as to the McCartys] after the dates the liens had attached. The liens were secured under Section 56.021 [former Articles 5476a and 5476c] when Halliburton and Tank Rental filed their affidavits with the county clerk not later than six months after their work was completed. Halliburton served notice upon all of the leasehold owners of record in compliance with Section 56.021(b), but Tank Rental failed to serve notice upon the McCartys, and their assignment had been recorded. The affidavits complied with the requirements of Section 56.022 [former Article 5476a]. See *Energy Fund of America, Inc. v. G.E.T. Service Company*, supra at 836, which holds that notice to the operator is sufficient when it is the owner of record title and that the subcontractor notice provision does not apply when the investors have not recorded their title.

■ Since the trial court found that Halliburton and Tank Rental had neither actual nor constructive notice of the unrecorded assignments nor of the operator's intention to subdivide the lease into separate units, and since we have held there is evidence which is both legally and factually sufficient to support these findings, an extensive discussion of the cases cited by appellants is not required. *Hoffman v. Continental Supply Co.*, 120 S.W.2d 851 (Tex. Civ.App.—Eastland 1938), *rev'd on other grounds*, 135 Tex. 552, 144 S.W.2d 253 (Tex.Comm'n App.1940, opinion adopted), is not in point. In *Hoffman* the mineral lien was held to be good against the purchaser of pipe which had been used in a dry hole even though the operator did not own the record title to the lease at the time the lien was perfected. Appellants rely upon language found in *Youngstown Sheet and Tube Company v. Penn*, 355 S.W.2d 239 at 246 (Tex.Civ.App.—Austin), *rev'd in part and aff'd in part*, 363 S.W.2d 230 (Tex. 1962); however, the opinions show that the lien claimant in that case knew the names of the nonoperators and failed to comply with the subcontractor notice provisions which are now found in Section 56.021,

supra. The doctrine of "after acquired title," mentioned by appellants, operated to vest their title as to the unleased minerals when the operator acquired leases on the unleased interests after the oil wells were drilled, but that title came to them burdened by the liens which had been perfected and which covered not only the leasehold estate, but also the oil wells and related equipment. See *Bancroft v. Welch,* 258 S.W.2d 406 at 408 (Tex.Civ.App.—Eastland 1953, no writ). See also Section 56.003, supra. Since there was neither actual nor constructive notice to Halliburton and Tank Rental that the operator was planning to develop the lease as separate units, their liens attached to the entire leasehold estate. Under the same findings, there was no gap of more than six months between the date services were provided and the liens perfected.

Section 56.041 [former Articles 5475 and 5476] of the mineral lien statutes allows the claimants to enforce their liens in the same manner as a mechanic's or materialman's lien under Chapter 53 of the Property Code, and Section 53.156 [former Article 5453] authorizes the recovery of attorney's fees.

The judgment of the trial court is affirmed.

ARNOT, J., not participating.