# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41153

In the Matter of:  T.S.C. SEIBER SERVICES, L.C.,

Debtor

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2014

Lyle W. Cayce
Clerk

------------------------------------------------------

HOLT TEXAS, LIMITED, doing business as Holt Cat; TRANSAMERICAN UNDERGROUND, LIMITED,

Appellants

v.

STEPHEN J. ZAYLER,

Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Holt Texas, Ltd. ("Holt") and Transamerica Underground Limited ("TAUG"), subcontractors of the bankrupt T.S.C. Seiber ("Seiber"), appeal the September 24, 2013, district court judgment affirming a prior bankruptcy court order.  The district court held that funds of an interpleader action, filed by EnCana Oil & Gas (USA) Inc. ("EnCana"), were property not of EnCana, but

No. 13-41153

property of the bankruptcy estate of Seiber because the interpleader action extinguished the earlier construction liens of Holt and TAUG. Thus, on appeal they challenge the district and bankruptcy courts' reasoning and conclusions that: (1) the Texas Construction Trust Funds Act did not apply, because EnCana's deposit of the funds was not a qualifying payment triggering creation of a trust fund; and (2) Appellants did not have valid, perfected mineral liens under chapter 56 of the Texas Property Code. We consider Appellants' contentions de novo and, for the reasons that follow, we VACATE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

I.

The facts are undisputed. In 2008, EnCana engaged Seiber to build a natural gas pipeline in Robertson County, Texas, known as the Camp Creek 12-inch Pipeline Project ("the project"). Holt and TAUG were among the subcontractors of Seiber, the primary contractor. Holt provided heavy machinery, parts, and services; TAUG installed over two thousand linear feet of pipe. The agreement between EnCana and Seiber provided that if a subcontractor notified EnCana that it had not been paid by Seiber, EnCana would withhold all sums remaining and make no further payments to Seiber.

In due course, EnCana made two payments to Seiber for exactly half of the total contract price. Following those payments, however, in August 2009, TAUG notified EnCana that it was not being paid and, under Texas law, would look to EnCana for payment of the $96,300 that TAUG claimed it was owed. Accordingly, EnCana withheld the remaining half of the contract payments. It later received reports that Seiber failed to pay other subcontractors as well.

In September 2009, EnCana filed an interpleader, naming Seiber and the project's subcontractors, including Holt and TAUG, as defendants, in the Northern District of Texas. EnCana sought protection of its property and a

2

No. 13-41153

declaration shielding it from further liability for the unpaid amounts owed by Seiber to its subcontractors and deposited just more than $345,000 into the district court registry, disclaiming any interest in the interpleader funds.

In October 2009, Seiber filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the Eastern District of Texas. The petition was quickly converted to a Chapter 7 petition, and Appellee Stephen Zayler was appointed trustee of the bankruptcy estate. Shortly thereafter, Holt, like TAUG earlier, formally notified EnCana that it had not been paid for work done on the project and would look to EnCana for payment of the $207,480.80 it was owed. It is undisputed that EnCana was already aware Holt had performed work and not been paid because EnCana included Holt as a defendant in the earlier-filed interpleader action.

In November 2009, TAUG filed its Affidavit Claiming Mineral Lien, against property of EnCana, in the public records of Robertson County, Texas. Holt filed its Affidavit Claiming Mineral Lien in March 2010.

Later that year, the interpleader action was transferred to the Eastern District, and the case was referred to the bankruptcy court of that district. After dismissal of certain defendants, the court determined that EnCana had tendered all required funds into the registry and fulfilled all other statutory duties. In April 2012, EnCana was discharged from the action. No party appealed that discharge order.

The remaining parties filed competing motions for summary judgment, agreeing that no genuine issues of material fact existed and requesting resolution of their rights to the interpleader funds as a matter of law. Holt and TAUG argued that two Texas statutory schemes protecting subcontractors required that the interpleader funds be awarded to them: Chapter 56 of the Texas Property Code and the Construction Trust Funds Act ("CTFA"). The bankruptcy court held that, based on the plain language of the statutes,

3

No. 13-41153

neither applied, and the interpleader funds were therefore part of the bankruptcy estate. Holt and TAUG appealed to the district court, which affirmed the judgment of the bankruptcy court and adopted its reasoning. Holt and TAUG now appeal the judgment of the district court.

## II.

The overarching question in this appeal is whether the district court erred in holding that the disputed funds were property of the bankruptcy estate. The subcontractors and Zayler in essence argue which as between the two has "superior rights" to the disputed funds. Under section 541 of the Bankruptcy Code, at the time of filing the bankruptcy petition, the bankruptcy estate is created and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). If Appellant subcontractors can demonstrate that, as of the time of the bankruptcy filing, either Seiber, the prime contractor, had no legal or equitable interest in the disputed funds or Appellants held a superior interest to Seiber, Zayler, the trustee, must yield. As noted earlier, the interpleader action was filed about a month before the petition for bankruptcy was filed.

When reviewing "a decision of a district court, sitting as an appellate court, [the court of appeals] applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). A bankruptcy court's conclusions of law are reviewed de novo. *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011).

The bankruptcy court decided this case on summary judgment. Under the Bankruptcy Code, the standard for granting summary judgment is the same as Federal Rule of Civil Procedure 56. *See* Fed. R. Bankr. P. 7056. Accordingly, "[s]ummary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

No. 13-41153

*In re SeaQuest Diving, LP*, 579 F.3d 411, 417 (5th Cir. 2009). As noted, the facts of this case are undisputed by the parties. The only dispute is whether either of the Texas statutory schemes—chapter 56 or the CTFA—apply to provide Holt and TAUG with a superior right to the funds, as judged in the background of the interpleader action and the petition for bankruptcy.

III.

A.

Generally, the determination of the nature of a debtor's interest in property is a matter of state law. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. . . . Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

So, under Texas law, the question is who had legal possession of the funds after the funds were deposited in the registry of the court, but before there was any action of the district court with respect to the interpleader funds. We first turn to Texas law that provides special protection to unpaid subcontractors through a variety of statutory schemes. Those schemes include two at issue in this action. First, chapter 56 of the Texas Property Code provides mineral subcontractors with a statutory lien "to secure payment for labor or services related to the mineral activities." Tex. Prop. Code § 56.002. Further, Texas "lien statutes . . . [should] be liberally construed for the purpose of protecting laborers and materialmen." *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972) (stating "the primary object of [the lien statute] . . . is to afford security and protection to laborers and materialmen").

Second, chapter 162 of the Texas Property Code, the CTFA, states: "Construction payments are trust funds under this chapter if the payments are

made to a contractor or subcontractor . . . under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code § 162.001(a). The CTFA was enacted to "supplement[] the remedies . . . available to laborers and materialmen." *In re HLW Enters. of Tex., Inc.*, 157 B.R. 592, 597 (Bankr. W.D. Tex. 1993) (citing Texas cases in support). "Prior to the enactment of this statute, the statutory remedies . . . were limited to the right to sue on a contractor's performance and payment bond . . . and the right to file a lien against the real property." *Id.* (internal citations omitted). Section 162.001, however, protects subcontractors without requiring notice or other action, such as filing of an affidavit, as a prerequisite. *Id.* Similar to Texas's remedial lien statutes, the CTFA "was enacted for the protection of [subcontractors], and is a remedial statute that should be given a broad construction." *Dealers Elec. Supply Co. v. Scroggins Const. Co.*, 292 S.W.3d 650, 658 (Tex. 2009).

Holt and TAUG, in urging the reversal of the district court judgment, contend that the interpleader funds are not part of Seiber's bankruptcy estate for two reasons. First, Appellants assert the district and bankruptcy courts erred in finding that, following EnCana's filing of this interpleader action and depositing funds into the district court registry, Holt and TAUG could not assert or perfect mineral liens against EnCana's property. Instead, they contend they complied with chapter 56's procedural requirements for notice of non-payment and filing of an affidavit claiming a lien against that property. *See* Tex. Prop. Code § 56.021 (securing lien). Holt and TAUG further argue that these valid liens on EnCana's property extended to the interpleader funds.

Zayler counters that the lower courts properly applied chapter 56's safe harbor provisions, which limit an owner's (i.e., EnCana's) liability to "the amount agreed to be paid in the contract" and no "more than the amount that owner owes the original contractor when the notice is received." Tex. Prop.

No. 13-41153

Code §§ 56.006 & 56.043.  Thus, Zayler argues, EnCana's deposit into the district court registry automatically extinguished its liability to Seiber, which meant that the funds then belonged to Seiber, and no longer to EnCana; consequently, Zayler contends that, after the funds were deposited with the court, the statutory liens of Holt and TAUG were extinguished and could not attach to the funds or any of EnCana's property.  Furthermore, Zayler asserts that mineral liens are limited to the statutorily defined property and may not be asserted directly against the interpleader monetary fund.

Second, Holt and TAUG contend that the district and bankruptcy courts erred in finding the CTFA inapplicable; the district court did so on the grounds that EnCana's interpleader deposit was not a payment "made to a contractor or subcontractor, or to an officer, director or agent of a contractor or subcontractor."  Tex. Prop. Code § 162.001(a).  They assert that the two initial payments by EnCana to Seiber, for half of the contract price, established the trust fund from which laborers and materialmen were to be paid, and the trust extended to the remaining, then-unpaid, funds from which Holt and TAUG were entitled to be paid.  Alternatively, they contend the district court, or the clerk of the court, should be considered an agent or officer of EnCana or the parties generally.  Zayler stands by the district court ruling.  We turn now to address these arguments of the parties.

B.

1.

Chapter 56 provides:  "A mineral contractor or subcontractor has a lien to secure payment for labor or services related to mineral activities."  Tex. Prop. Code § 56.002.  The district and bankruptcy courts were correct that the liability of a mineral property owner, as defined in chapter 56 and including EnCana, is limited to the total "amount agreed to be paid in the contract" and "the amount that the owner owes the original contractor when the notice [of

7

nonpayment to subcontractors] is received." *Id.* §§ 56.006 & 56.043. As to TAUG, which provided notice of nonpayment on August 25, 2009, or one month prior to EnCana's filing of this interpleader action, these provisions provide no support for Zayler's claim. The statutory safe harbors refer to the amount owed at the time of *notice*, not to the amount owed at the time the affidavit is filed. TAUG then filed timely its affidavit within "six months after the day the indebtedness accrue[d]." Tex. Prop. Code § 56.021. We note that post-bankruptcy-petition perfection of liens is expressly allowed by the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(3) (exception to automatic stay). Thus, even under the bankruptcy court's reasoning, TAUG held a valid mineral lien against EnCana's property at the time EnCana was discharged from further liability to Seiber; and we accordingly uphold the validity of TAUG's chapter 56 lien.

2.

As to Holt, which provided notice to EnCana in October, but not until shortly after EnCana's funds had been paid into the district court registry, the question is whether the district court erred in holding EnCana's interpleader and its deposited funds automatically satisfied its liability to Seiber, thus transferring legal possession of the funds to Seiber and the bankruptcy estate. We hold that it did not. The bankruptcy court cited only one opinion, which involved an owner that had paid *the contractor* in full prior to notice of the subcontractor's claim. *Energy-Agri Prods., Inc. v. Eisenman Chem. Co.*, 717 S.W.2d 651, 653 (Tex. App. 1986). As the bankruptcy court pointed out in its CTFA analysis, discussed below, that is not the case here.

The district and bankruptcy courts erred in failing to draw the distinction between the act of depositing funds into the district court registry and the judicial act of discharging the depositor of any further liability. Simply depositing interpleader funds does not automatically mean that the funds have

been legally accepted, ownership thereof transferred, and the interpleader relieved of further duty to the court or further obligation to the parties of the dispute.  If this were so, the interpleader would be the final judge of its own legal obligations relative to the dispute, by depositing a sum solely determined by it, washing its hands of any relationship to the dispute and walking away whistling Yankee Doodle.  Indeed, in this case there is an explicit finding by the bankruptcy court that EnCana had met its statutory obligations, an order requiring it to withdraw its proof of claim against Seiber, and discharging it from the action almost two and a half years after the original filing and deposit.  A party filing an interpleader is at least required to obtain court approval before it can disclaim interest in the deposited sum as satisfaction for any liability it may have had in the dispute.  28 U.S.C. § 2361 (process and procedure).

Appellee attempts to rebut this conclusion by citing *Adobe Oilfield Servs., Ltd. v. Trilogy Operating, Inc.*, 305 S.W.3d 402 (Tex. App. 2010).  In *Adobe*, as in this case, an owner withheld payment to a contractor, whose subcontractors demanded payment directly from the owner.  *Id.* at 406.  The subcontractors threatened to file mineral liens against property of the owner to ensure payment.  *Id.*  In response, the owner deposited funds covering the entire amount due to the contractor into the court registry and sought a temporary restraining order ("TRO") enjoining the subcontractors from filing such liens.  *Id.*  The Texas appellate court affirmed the trial court's issuance of the TRO based on the owner showing a likelihood of success in seeking discharge, and irreparable harm to itself if the liens were filed.[1]  *Id.*  But contrary to Zayler's argument, *Adobe* does not stand for the proposition that

---

[1] The owner had a contractual duty to prevent liens from being filed on the property and would have been in breach of that duty if the liens were filed.  *Id.* at 406.

merely depositing the funds in the court registry prevents the attachment of liens or extinguishes liens already attached against the owner's property. Instead the owner in *Adobe* deposited the funds, and then judicially established its entitlement to a TRO by demonstrating that it was likely to be discharged from further liability in the dispute, and second, that the filing of the liens would result in irreparable harm to its interests. Thus, Zayler cannot rely on *Adobe* to support his argument that the bare deposit of funds into the district court registry extinguished the liens held by Holt and TAUG on EnCana's property.

3.

Appellee also contends that Holt and TAUG's mineral liens extend only to the statutorily defined property, which does not include monetary funds. *See* Tex. Prop. Code § 56.003 (naming property including material, machinery, supplies, oil and gas well interests, and land interests). Although it seems a mineral lien that is specifically meant "to secure payment" should extend to funds owed to the prime contractor and specifically deposited to satisfy liens or claims made by subcontractors, we need not address whether chapter 56 allows the liens to extend to the funds because the bankruptcy court entered an order, separate from this appeal, ruling on the interpleader and discharging EnCana. As part of this Discharge Order, the bankruptcy court held "[t]hat any *properly* perfected mineral liens . . . held by [Holt and TAUG] . . . are hereby TRANSFERRED to the proceeds constituting the Interpleader Fund held in the registry of this Court to the same priority and extent they currently exist against the Robertson County property." (emphasis added).[2] This order

---

[2] In the bankruptcy court order that is the subject of this appeal, the bankruptcy court, in contrast to this earlier final and unappealed order, subsequently held that Holt and TAUG *did not* have properly perfected mineral liens at the time of discharge. Accordingly, the court held that no lien was transferred to the funds.

No. 13-41153

became final and was not appealed. In this connection, the only issue then is whether the liens were properly perfected, and in this opinion we have held that Holt and TAUG held valid, properly perfected liens, as per chapter 56, against EnCana's property, up until the time of EnCana's discharge from the interpleader. And per the bankruptcy court's unappealed Discharge Order, then, Holt and TAUG's mineral liens attached to the interpleader funds.

4.

Furthermore, we need not determine whether these funds should be paid directly from the registry to Appellants or whether they should be paid to Zayler for the "sole permissible administrative act . . . [of] pay[ing] over or endors[ing] the sums due to the beneficial owners of the [funds]." *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 968 (5th Cir. 1983). In some cases, funds trapped by properly filed Texas statutory liens are excluded from the bankruptcy estate. *Green v. H.E. Butt Foundation*, 217 F.2d 553, 554–55 (5th Cir. 1954). It is clear that, at minimum, lien-holding subcontractors have preference over other estate creditors. *See* Tex. Prop. Code § 53.121 (granting preference for mechanic's lien); Tex. Prop. Code § 56.041 (authorizing enforcement in the same manner as chapter 53); *see also Perry v. Wood*, 63 F.2d 257, 257 (5th Cir. 1933) (affirming preference to lien-holding subcontractors "over other creditors of the contractor"). We leave the determination of the proper procedural mechanism to the district court on remand.[3]

IV.

For these reasons, the judgment of the district court is VACATED and the action is REMANDED for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

[3] Because we hold that Holt and TAUG had a superior right to the funds in accordance with chapter 56, we need not reach their alternative argument that the CTFA created a trust in the funds for their benefit.

11