## CLAYTON et al. v. BRIDGEPORT MACH. CO.
### No. 754.

Court of Civil Appeals of Texas. Eastland.

Dec. 5, 1930.

Rehearing Denied Jan. 9, 1931.

B. W. Patterson, of Eastland, for appellants.

Scott W. Key, of Eastland, for appellee Consolidated Gasoline Co.

Ben J. Dean, of Breckenridge, for appellee Bridgeport Machine Co.

FUNDERBURK, J.

The Bridgeport Machine Company brought this suit against certain defendants, including E. A. Clayton, Minerva Parkhurst Clayton, S. A. Hopkins, Lillian A. Hopkins, and Consolidated Gasoline Company, a corporation, to recover, as against the defendants E. A. Clayton and S. A. Hopkins, the price of

788

certain merchandise, and as against all defendants a foreclosure of an alleged materialman's lien upon an oil and gas lease and certain personal property, and as against the Consolidated Gasoline Company for conversion of gas alleged to be covered by such lien. The lease in question was given by H. H. Jones to E. A. Clayton, of date March 30, 1927, and included more than 200 acres of land. On April 23, 1927, E. A. Clayton executed and delivered to S. A. Hopkins an assignment of three-fourths of seven-eighths of said lease, in so far as it covered 160 acres in the form of a square. This assignment was filed for record January 13, 1928. On February 8, 1928, E. A. Clayton, by two different instruments, assigned said lease, in so far as it covered 49.3 acres, to Lillian A. Hopkins and Minerva Parkhurst Clayton, three-fourths to the former and one-fourth to the latter; the said assignments having been recorded February 25, 1928. The balance claimed upon the account sued on was for $1,842.67. The account covered tools and supplies commonly used in the drilling of oil and gas wells; some of the items being for such tools and supplies as were sold, and others being for the rental thereof. The date of the first item was February 14, 1928, amounting to $251.20, and the date of the latest item being April 13, 1928. Included in the account were the following items: "4/1/28 Repairs on socket bowl split, $60.00. Repairs on two sets slips, 8.00."

The affidavit to the account made for the purpose of fixing a lien referred to the merchandise listed in the account only as "materials." The first credit shown on the account was of date March 30th, and being "Cash, $500.00." Said $500 was paid and applied on the account without any direction as to what items it should cover. At that time there was due on the account for items furnished before February 25th, the date of the registration of the assignments from E. A. Clayton to Mrs. Lillian A. Hopkins and Minerva Parkhurst Clayton, only the said item of February 14th, amounting to $251.20. Regarding said $500 as having been applied by law in discharge of the older items, it appears that all of the items embraced in the account and not paid for at the date of the registration of said assignments were furnished thereafter, beginning with March 25, 1928. All of the items of the account were furnished to E. A. Clayton, and the claim of liability against Hopkins was predicated upon his having been a partner with Clayton, or, in the alternative, as having assumed liability for the account. The foregoing statement will be supplemented as may be necessary in discussing the questions presented.

In a trial without a jury the court gave plaintiff judgment against E. A. Clayton for the amount claimed, but denied recovery against S. A. Hopkins, Consolidated Gasoline Company, and the other defendants, except to award a foreclosure of a lien upon the oil and gas lease. The defendants, other than the defendant Consolidated Gasoline Company, have appealed.

The contention of appellee Bridgeport Machine Company, as embodied in one of its cross-assignments of error, to the effect that the trial court erred in refusing judgment in its favor against Consolidated Gasoline Company for conversion of gas, cannot be considered. Neither Bridgeport Machine Company nor Consolidated Gasoline Company having appealed from the judgment below, this court is without jurisdiction to disturb the judgment in favor of Consolidated Gasoline Company. "The appeal by appellant does not give the court jurisdiction to consider cross-assignments by one appellee as against a co-appellee." 3 Tex. Jr. § 609; Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576.

Appellants contend that R. S. 1925, art. 5473, purporting to authorize the fixing of a lien in favor of "any person, corporation, firm, association, partnership, materialman, artisan, laborer or mechanic," who shall "perform labor or furnish material, machinery or supplies, used in * * * drilling * * * any * * * oil or gas well," etc., is void, because it does not expressly provide what the lien shall secure. We think the statute as clearly implies, as if it were expressed, that the lien is given in favor of those named, to secure payment of the price or value of the "material, machinery or supplies" furnished, or "labor" performed. We therefore overrule the proposition contending that the statute is void.

Another question presented is whether a lien is given by the statute to secure the price or value of the rental of drilling tools. In the account sued upon, $428.30 of the total amount was for the rental price or value of certain tools furnished by Bridgeport Machine Company and used in the drilling of an oil or gas well upon the lease in question. More specifically, the question presented is: When tools are rented and used in drilling an oil or gas well, are they properly to be regarded as "material, machinery or supplies" furnished and used in drilling an oil or gas well under a contract, express or implied, within the terms of the statute? If so, the lien exists to secure the contract price, if expressed, or the reasonable value, if implied. Were the lien given only to secure labor and material, we would incline to the view that it would not cover the rental of tools. Waters-Pierce Oil Co. v. United States & Mexican Trust Co., 44 Tex. Civ. App. 397, 99 S. W. 212. The statute, however, also authorizes a lien to secure payment of machinery and supplies so furnished and used. We will not stop to inquire if the tools in question may properly be regarded as machinery. We think that tools such as these, which are customarily used in

the drilling of oil or gas wells under rental contract, are "supplies" within the terms of the statute. One definition of "supply" is "to furnish with what is wanted." Webster's Dictionary. Other definitions are: "Available aggregate of things needed or demanded; * * * anything yielded or afforded to meet a want; the act of furnishing with what is wanted." 37 Cyc. 607. Under a statute giving a lien for furnishing supplies the word "supplies" has been held to include, among other things, "shovels, carts," etc. Carson v. Shelton, 128 Ky. 248, 107 S. W. 793, 15 L. R. A. (N. S.) 509. If the tools were sold and used in the drilling of the well, there would certainly be no question that they were supplies. We fail to see that they are any the less supplies simply because, instead of an outright sale, there is a sale of their use, the title thereto remaining in the company furnishing them.

■ It is further contended that plaintiff had no lien to secure it in the sale or rental price or value of the tools because they were not shown to be consumed in the drilling operations. It is argued that, where supplies have a value, after the drilling operations are finished, the lien can be fixed only, if at all, for the value of the use of such supplies. It is a sufficient answer to this proposition to say that the statute does not prescribe such a limitation. If that construction should be given the statute, it would render it of little effect as applied to any machinery or supplies furnished and used in the drilling of a well, if they have a value after the completion of drilling operations. It would be exceedingly difficult, if not impossible, for the lien claimant to properly state his account for the value of the use, since the extent of the use in a case where an outright sale had been made would be a matter not within his knowledge, and perhaps not within the knowledge of any one at the time it would be necessary for the lien to be fixed. We are therefore unable to adopt the view that the lien secures only the value of their use when the machinery or supplies are sold.

■ It is also insisted that the lien, if it existed at all, was only for material furnished and not for labor performed or machinery or supplies furnished. It is pointed out that, in no event, did the aggregate charges for "material" as distinguished from the charges for "labor" performed, or "machinery" or "supplies" furnished, amount to more than $1,306.37 of the total of $1,863.61 embraced in the account. The point of the argument is that the affidavit to the account made for the purpose of filing a lien refers to the several items only as "material" or "materials." We would be inclined to sustain the proposition if the affidavit was required to be looked to alone in order to ascertain the true nature of the account. But the affidavit is but a part of the instrument of which the account itself is another part. The account, as we have already said, itself shows that it consists largely, if not altogether, of supplies furnished and used in the drilling of an oil or gas well. The account and the affidavit, read together, clearly disclose the verbal inaccuracy in denominating all the items as "material." So read together, it clearly appears that the account covers items for which the law gives a lien, and this we think should be held sufficient.

■ We are unable to sustain the further proposition, contending that there was no lien because the affidavit for the lien does not show that the articles embraced in the several items of the account were used in drilling the well. We think the affidavit properly construed asserted that the supplies were used in drilling the well. The affidavit says that said items, designated as "material," were "furnished for the said E. A. Clayton in * * * drilling * * * an oil or gas well," with a description of the lease and location of the well.

■ Two important questions are raised by appellant's fifth and sixth propositions. By the fifth proposition it is contended, in substance, that the court erred in decreeing the existence and foreclosure of the lien upon the 49.3-acre tract out of the lease, three-fourths of which was conveyed to Lillian A. Hopkins and one-fourth to Minerva Parkhurst Clayton, by the assignments dated February 8, 1928, and recorded February 25, 1928. The only item included in the account which was furnished prior to February 25, 1928, the date said transfers were recorded, is that of $251.20, under date of February 14, 1928. On March 30th thereafter, a cash payment of $500 was made which more than paid said $251.20. It therefore appears that no part of the material, machinery, or supplies for the price of which the lien was sought to be fixed was sold or delivered prior to the time the transfers were made and recorded. From this it results that, when each and all of the items sought to be recovered in this suit were furnished, the 49.3-acre tract out of the lease was owned exclusively by Lillian A. Hopkins and Minerva Parkhurst Clayton. No part of the machinery or supplies was used in drilling a well upon said 49.3-acre tract. The owners did not consent to the fixing of a lien upon said tract. the conclusion that the lien cannot be made to include the 49.3-acre tract. It is elementary that no lien can exist to secure payment of items that have been paid. The law itself, in the absence of agreement or direction by the debtor, made such application of the $500 payment on March 30th as to pay all items of the account due at the time the transfers were made and notice thereof by registration was given. In Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37, the Supreme Court held that a mechanic's lien cannot be established against the owner of land without his knowledge or con-

sent. The same would be true, of course, of a materialman's lien. We are therefore of opinion that the court erred in awarding a foreclosure of the lien as to the defendants Lillian A. Hopkins and Minerva Parkhurst Clayton, and as to said 49.3-acre tract, and that the judgment of the trial court should be reformed so as to exclude same from the decree of foreclosure.

The other proposition involves the items of "repairs on socket bowl split" of $60 and repairs on "two sets slips" of $8. These repairs, we take it, were made upon tools that were rented. In the first place, the cost of such repairs would not be chargeable to the defendants unless liable therefor, either upon contract obligation or for negligence, neither of which appears. Clearly, we think, the items are not shown to be such as the law gives a mechanic's or materialman's lien to secure. The judgment will therefore be reformed to omit said items from foreclosure of the lien.

One of the cross-assignments urged by appellee Bridgeport Machine Company is to the effect that the trial court erred in denying it judgment against S. A. Hopkins personally for the amount of the account. It is contended that the undisputed evidence showed that S. A. Hopkins and E. A. Clayton were mining partners, each owning an interest in the lease at the time the supplies were furnished, and each uniting and co-operating with each other in the drilling operations. We have concluded that this cross-assignment should be sustained. The drilling of the well was begun in January or February, 1928. The lease was dated March 30, 1927. The assignment from E. A. Clayton to S. A. Hopkins of a three-fourths interest in 160 acres of the lease was dated April 23, 1927, and was filed for record January 3, 1928. All of the items of the account sued for were therefore furnished and delivered after said assignment was recorded. Hopkins himself testified that, under his agreement with Clayton, he was to furnish the casing and rig to drill the well, and, when the well was finished, he was to pay $7,500 for the three-fourths interest in the lease. It therefore appears that all of the elements were present which the Supreme Court in Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.(2d) 1052, held would constitute a mining partnership. There was joint ownership and co-operation of the owners in carrying on the drilling operations.

Appellants insist that the agreement by which Hopkins was to acquire his interest in the property was executory, and therefore it cannot be said that as an owner he united and co-operated with Clayton in the drilling operations, but the agreement was not, according to Hopkins' testimony, wholly executory. That part of same which obligated him to furnish the rig and casing was executed. It is true that Hopkins testified that he was not to have any interest until the well was completed to a specified depth, but this testimony must be regarded as in the nature of an erroneous conclusion, since the assignment conveying him a three-fourths interest in the lease was all the time of record and presumed to have been delivered.

The judgment of the trial court in so far as it denied a recovery in favor of plaintiff against the defendant Hopkins for the amount of the account will be reversed and here rendered in favor of plaintiff.

Reformed and affirmed in part, and reversed and rendered in part.