## KEYSTONE PIPE & SUPPLY CO. v. WRIGHT et al.

### No. 12409.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 10, 1931.

Hampden Spiller, of Lubbock, and Slay & Simon and Cecil Rotsch, all of Fort Worth, for appellant.

Kilgore & Rogers and J. T. Montgomery, all of Wichita Falls, for appellees.

DUNKLIN, J.

The Keystone Pipe & Supply Company instituted this suit against V. O. E. Wright and R. I. Owen, as partners, and the First National Bank of Wichita Falls, to recover a balance of $2,808.06 claimed to be due for oil well supplies sold by plaintiff to the partnership firm, and for foreclosure of a statutory furnisher's lien as against them and

also against the defendant bank on two oil leases held by the partnership at the time said supplies were sold, and on which the same were used. It was alleged that defendant bank was claiming some interest in the leases but that the same was inferior to the lien claimed by plaintiff.

A judgment by default was rendered in plaintiff's favor against defendants Wright and Owen for its debt, but plaintiff was denied a foreclosure of lien as against the defendant bank, and from that decree it has prosecuted this appeal.

The supplies sold by plaintiff were used by Wright and Owen on two oil leases situated in Archer county which they owned; and on December 24, 1927, plaintiff filed in the office of the county clerk of that county its claim of a statutory lien on those leases for the supplies so furnished. The lien claimed was under and by virtue of the provisions of article 5473, Rev. Civ. Statutes, and the steps taken to fix the lien were under and by virtue of the provisions of articles 5476, 5453, 5455, and 5467.

By the terms of article 5473, one furnishing supplies or material used for such purposes as Wright and Owen used the supplies purchased by them is given a lien upon the supplies so furnished, and upon the lease upon which they are used; and article 5453 provides that one who furnishes such material under a contract with the leaseholder which is not in writing, may fix said lien by filing an itemized account of his claim supported by an affidavit showing that it is just and correct and that all lawful offsets, payments, and credits known to affiant have been allowed. Article 5455 prescribes a form to be used for such affidavit, and that form was followed by plaintiff in the steps taken by it in the present suit; the affidavit containing the statement that the supplies were furnished to Wright and Owen under a contract with the plaintiff; and it is to be inferred that that contract was in parol.

Article 5467 reads as follows:

"When labor is performed by the day or week, then the indebtedness shall be deemed to have accrued at the end of each week during which labor is performed. When material is furnished, the indebtedness shall be deemed to have accrued at the date of the last delivery of such material, unless there is an agreement to pay for such material at a specified time."

The principal question presented here for our determination is whether or not the affidavit so filed by the plaintiff was filed within the time required by article 5467, just quoted.

As noted above, the affidavit claiming the lien was filed for record in the office of the county clerk of Archer county, on December 24, 1927, and the account attached to the affidavit as a part thereof shows numerous items of supplies sold to Wright and Owen on divers dates, beginning November 26, 1926, and ending November 22, 1927. In the account so filed with the county clerk, the following items are charged as accruing during the year 1927:

| | |
|---|---|
| 2/12 int. on note $1000.00 from 1/13 to 2/13 | $ 6 66 |
| 3/12 int. on note $1000.00 from 2/12 to 3/2 | 6 66 |
| 4/11 int. on note $1500.00 int. 2/11 to 4/11 | 20 00 |
| 7/20 int. on note $1500.00 from 4/11 to 7/20 | 33 00 |
| 8/15 int. on note $522.23 from 7/15 to 8/15 | 3 48 |
| 9/14 int. on note $2300.00 from 7/15 to 9/15 | 30 66 |
| 12/16 H 1848 1-¼" steel lip union .10 | |
| 1 ¼ x 2" blk Nipple .20 | |
| 1 ⅛ x 8 Blk Nipple .08 | |
| 1 ¼ Mcht coupling .05 .25 | |
| Balance.... | $2808 06 |

And the same with the balance stated is the concluding page of the account. The first item shown in the account at its beginning is the following: "1926 cr. bal. brt. forward $2223.83." But nowhere in the account are those credits itemized. Nor was there any pleading or proof as to when those credits arose, or when or how they were applied on the items charged against Wright and Owen.

In plaintiff's petition it was alleged that Wright and Owen executed to plaintiff their promissory note for the principal sum of $2,300, dated July 15, 1927, drawing interest at the rate of 8 per cent. per annum and 10 per cent. attorney's fees; that the same was executed on their said account with plaintiff and there was a prayer for recovery of principal, interest, and attorney's fees on that note, in the aggregate sum of $2,648.06. The petition also prayed for recovery upon an alleged contract in writing executed by Wright and Owen to pay plaintiff the sum of $254.79 for 15 joints of 6-3/8" casing, and in the account filed the item for that casing is included as a charge made on October 28, 1927; and that item, together with the note for the principal sum of $2,300 with principal and interest and attorney's fees, represented the full amount for which plaintiff sued; and $2,808.06, alleged as the balance due on said account, was the full amount for which a lien was claimed. The alleged contract to pay $254.79 was introduced by plaintiff, and instead of being a contract of sale, it was a lease in writing, of date October 28, 1927, of the casing, and by its terms Wright and Owen agreed to pay rentals for the use of the casing and to return it to plaintiff at the expiration of the lease. It further provided that the pipe was to be used by Wright and Owen on a lease held by them on the W. M. Miller farm Denton county school lands. The lease also gave the lessees the right to purchase the pipe for a stated price, and in the event that option should be exercised, then the lessor would execute to them a bill of sale therefor. In that connection, however, the lease further stipulated as follows:

"It is expressly understood, however, that this right is purely optional, and that the lessee has not and shall not have any title or interest, legal or equitable, in or to said property under this contract unless and until said option is exercised and said price paid.

"All indebtedness becoming due from lessee to lessor under this agreement shall bear interest at the rate of 8 per cent. per annum from and after the time when such payments become due. If lessee should convert the above described property or any part thereof to his own use and benefit, or if lessee should fail to return or surrender said property or any part thereof to lessor when under the terms of this contract said property is returnable to lessor, then lessor shall be entitled to interest at the rate of 8 per cent. per annum from the time when said property is returnable to lessor, upon the value thereof which said value is hereby fixed at the purchase price of which lessee has option to purchase hereunder."

I. E. Horwitz, president of plaintiff company, testified in part as follows:

"In July we took a new note for $2300.00, due in sixty days. That represented all he owed us at that time. We took the note as evidence of the account.

"He settled the account by his note and we have sued on the note and ask for attorney's fees on it, I think that is right, my attorney is taking care of that. We never charge over eight per cent. interest. This note bears eight per cent. interest. I think the note and interest is included in that amount of $2808.06. The attorney's fees are not interest. There is no interest on them. In July, 1927, we took a new note for the amount he was owing us, and that note was made payable in sixty days. He owed us $2300.00 and it was due, and with interest on the note it represents the amount for which we are suing, $2808.00.

"We had no special agreement with Mr. Wright, except of course in our business relations with him, we took notes on numerous occasions and it was our understanding he could reduce those notes at maturity and the balance could be renewed. We sold him something like 300 feet of 6-5/8ths inch casing; we had a contract in writing with reference to 15 joints of casing. My attorney ought to have that contract. We rented him this pipe with the privilege of buying it. This contract is dated the 28th of October, 1927. In filing our affidavit and lien I don't know whether we made reference to that particular contract, my attorney handled that for us, I don't know what he put in it. Mr. Wright bought this pipe, I said he bought it, he still has it out there, I presume they intended to keep it when they didn't return it. We made this contract with him and charged it up to him on the open account. (The defendant offers in evidence the rental agreement.) The agreement with reference to the pipe is explained in the written contract, for this $254.00 worth of pipe that we rented him. * * *

"The charge for this 300 feet of 6-5/8ths casing was entered against him on October 28, 1927, and it was 85 cents a foot. Under the terms of the contract he did not exercise the option to purchase the pipe. As a matter of fact, that casing was not returned. He has the casing out there on a rental basis and never returned it. We charged him with the value of the pipe and with the rental of it and when he returns it he gets credit for the full value and pays the rental price. If it is never returned a charge is made for the full purchase price. The price was provided in the contract that the pipe if purchased should be 85 cents a foot. * * *

"We sold this material to Wright and Owens. The statements show 2—20—60, which means two per cent. in twenty days, sixty days net. The term means that there is no discount allowed on the bill after the 20th of the following month, that's what it refers to. We expect payment on the accounts in sixty days. In printing the notations on our bills, that's the usual method of the supply companies. On our account we charge interest after sixty days. We allow them sixty days and charge them interest from the end of the sixty days. We don't charge them interest from maturity. On their account we charge them interest after sixty days on the amount. On every statement we sent out we allow two per cent. if paid in sixty days and net in sixty days. I think that appears from most of the statements.

"That is true as to all new items sold them, and as to second hand items it was thirty days net, but I don't know what we put on the statement. There is no discount on second hand items, it is thirty days net, but we never charged interest on any account that wasn't sixty days old. I think that statement appears in our invoices. We charge eight per cent. interest. The interest on their account was charged on the note. We didn't charge any interest on the account at all. We did not say anything to Mr. Wright or Mr. Owens about any such provisions you are inquiring about, that is, I didn't say anything to them about it. * * *

"I would have to see the rental agreement in order to tell you what it provides. The price stated in that contract was to be paid at our office at Fort Worth, payable at the execution of the contract; it was not paid. He didn't pay us any rental on the pipe; we just waived it at the time of the execution of the contract for Mr. Wright. He never returned this pipe; he told us it was out there on the lease. * * *

"The contract was mailed to them and we had no agreement with them about what the terms of the accounts were."

■■ It is apparent that the word "accrued," employed in article 5467 of the statute quoted above, was used in the sense of "due"; and by the opinion of Chief Justice Cureton in the case of Ball v. Davis, 118 Tex. 534, 18 S. W.(2d) 1063, it has been settled that in order to fix a statutory mechanic's or furnisher's lien, it is necessary that the affidavit and account filed must show that a sum certain is due and the date when due.

■ The note for the principal sum of $2,300 sued on in connection with the account filed, shows that the same was given for past-due items of material furnished and interest thereon, with no showing when any of those items became due; the account showing that interest had already been charged for similar prior notes which were renewed by the note sued on of date July 15, 1927. Even though it could be said that July 15, 1927, was the due date of all items of supplies furnished prior to that date, still no lien was created therefor because the affidavit and account were filed more than four months after that date. Furthermore, according to the testimony of plaintiff's president, I. E. Horwitz, all the supplies furnished were sold on a credit of 30 to 60 days. However, in this connection, we will say that the taking of the note would not, of itself, have the effect of a waiver of plaintiff's furnisher's lien, if the same was in fact fixed under the provisions of the statute, as appellee seems to contend. Pope v. Graham, 44 Tex. 196; Farmers' & Mechanics' Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; Breckenridge City Club v. Hardin (Tex. Civ. App.) 253 S. W. 873.

■ The account filed by plaintiff as a lien shows an item of date October 28, 1927, for "15 joints 6–5/8", 20# casing, 299' 9" .85 254.-79." That item is charged as for casing sold. However, plaintiff introduced in evidence the rental contract already noted, which was also pleaded by it as evidencing a sale. That contract shows on its face that that casing was rented for a stated price, and specifically that the contract was one of rental and not of sale. Nor was there any allegation in plaintiff's pleading nor showing in the affidavit filed with the account as to when and how that written contract ripened into a conveyance of title, and the date thereof and the due date of the amount of purchase price owing under such passing of title. Accordingly, plaintiff failed to establish its alleged lien for that casing.

The account filed shows several items other than the one for casing last discussed, which were sold after July 15, 1927, the date of the note sued on, and some of those sales occurred within the period of four months next preceding the filing of plaintiff's attempted lien; but it conclusively appears from the uncontradicted testimony of I. E. Horwitz that those items were satisfied by credits which he admitted had been allowed the partnership firm on their account; his testimony being that excluding the item for casing noted above, the note of date July 15, 1927, represented all that the partnership firm now owes the plaintiff.

Upon the trial there was an agreement of counsel for plaintiff and the defendant bank that the bank had a lien on the leases in controversy which was duly filed for record on December 19, 1927, some five days prior to the filing of plaintiff's purported furnisher's lien, and that the bank has since become the owner of those leases.

From the foregoing, we conclude that the judgment of the trial court denying plaintiff a decree establishing and foreclosing its alleged lien on the leases in controversy, and quieting the defendant bank in its title and possession of those leases, should be and the same is hereby affirmed. The judgment in plaintiff's favor against defendants Wright and Owen, of which no complaint is made here, is left undisturbed.