TREVOR REES–JONES, TRUSTEE FOR ATKINS PETROLEUM CORP., et al., Appellants,

v.

TREVOR REES–JONES, TRUSTEE FOR APACHE SERVICES, INC., et al., Appellees.

No. 08–90–00058–CV.

Court of Appeals of Texas, El Paso.

Oct. 31, 1990.

Rehearing Overruled Dec. 5, 1990.

Paul M. Bohannon, Midland and J. Glenn Turner, Jr., Baker, Glast & Middleton, P.C., Dallas, for appellants.

Scotta E. McFarland and Wade L. McClure, O'Neill, Banowsky & McClure, Dallas, for appellees.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a summary judgment entered for lien claimants against the mineral leasehold interest of the Appellants as the result of services rendered and equipment furnished in the drilling of oil and gas wells on the Cowden Leases in Upton County, Texas. We affirm.

The first issue the Court must decide is whether the lien claimants, whose interest is represented by the Trustee as Appellee, are mineral contractors or mineral subcontractors as those terms are defined in Chapter 56 of the Texas Property Code. The answer to that question will then control the issue as to what notice the lien claimants were required to give to perfect their liens. If the statutory requirements were met, we must then decide if the lien affidavits substantially complied with the Code requirements. If they did, we must then determine the effect of a settlement agreement between the lien claimants and the lease owner and operator who originally contracted for the work that was performed and the equipment that was furnished in the drilling and completion of the wells.

In 1985, Atkins Petroleum Corporation was the record owner of 100% of the working interest in the Cowden Leases. It entered into a series of letter agreements with the Appellants to sell mineral interest in these leases. Each participant agreed to pay a specific amount per well depending on whether the well was commercially productive or a dry hole. This was to be a "turnkey" operation for a specified sum based upon the specified percentage of the working interest each party agreed to purchase. Atkins was to be operator of the producing leases.

In January 1986, Atkins Petroleum contracted for the services and materials which formed the basis for the liens filed on the Cowden Leases when Atkins failed to make timely payments. At the time Atkins contracted with these claimants, it was the record owner of 100% of the working interest. Between March and July 1986, Atkins executed and recorded a series of assignments of ownership in the working interest to the Appellants in accordance with their prior letter agreements. Subsequently, the lien claimants filed their lien affidavits. No notice as provided for in Tex.Prop.Code Ann. § 56.021(b) and § 56.023 (Vernon 1984) was given to these Appellants. If such notice was required, then these liens are not valid

and the summary judgment must be reversed.

Tex.Prop.Code Ann. § 56.001 defines the terms which are controlling on this issue. It provides:

(2) 'Mineral contractor' means a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities under an express or implied contract with a mineral property owner or with a trustee, agent, or receiver of a mineral property owner.

. . . . .

(4) 'Mineral subcontractor' means a person who:

(A) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or with a subcontractor;

(B) performs labor used in mineral activities under contract with a mineral contractor; or

(C) performs labor used in mineral activities as an artisan or day laborer employed by a subcontractor.

The Appellants assert in their first point of error that the trial court erred in holding as a matter of law that the lien claimants were not mineral subcontractors as to the non-operating mineral property owners who had no contractual relationship with the mechanics and materialmen. The argument is made that Atkins was a mineral contractor for the Appellants whose interest was assigned to them prior to the liens being filed, and that if Atkins was a mineral contractor for them, then the lien claimants were necessarily mineral subcontractors under the terms of the statute.

First and foremost to a determination of the controlling issue, we must begin by recognizing that at the time the lien claimants made their agreements to provide materials and services all of the working interest was owned by Atkins. The contracts for services and materials were all made with Atkins. In fact no assignments would have been made to the Appellants if the wells were dry holes. Can the issue of whether those who provide services and materials are contractors

or subcontractors be dependent upon events that occur after the contract for such services and materials is made? We believe the answer should be "No". Having dealt with Atkins when that company owned all of the working interest and at a time when there is no question about its right or authority to contract for services and materials, the rights of those parties should not be governed by subsequent events between the owner and third parties who received assignments after the drilling cost had been incurred. If we are to say that the lien claimants did not "contract with a mineral property owner" who did they contract with? Certainly Atkins comes within the definition of a "Mineral property owner" as that term is defined in Section 56.001(3) of the Texas Property Code. Without dispute, Atkins was the owner of the mineral leasehold.

■ Appellants argue that because their letter agreements and the Operating Agreement with Atkins defined their relationship as independent contractors, Atkins had to be a mineral contractor acting in their behalf, and therefore the lien claimants were mineral subcontractors. Whatever that relationship was does not define the relationship between Atkins and the lien claimants. The lien claimants' status as contractors cannot be converted to that of subcontractors by another contract to which they are not privy. Most likely Appellants wanted their relationship with Atkins to be that of independent contractors so as to avoid personal liability that could arise from a partnership, agency relationship or joint venture. *See Ayco Development Corporation v. G.E.T. Service Company,* 616 S.W.2d 184 (Tex.1981).

We recognize that where an owner has paid his contractor in full before notice of a subcontractor's claim is received, the owner is not liable and his property is not subject to a lien. *Energy–Agri Products, Inc. v. Eisenman Chemical Company, Inc.,* 717 S.W.2d 651 (Tex.App.—Amarillo 1986, no writ). But, this is not a subcontractor's lien with which we are concerned. We do not believe the holdings in *Energy Fund of America, Inc. v. G.E.T. Service Company,*

610 S.W.2d 833 (Tex.Civ.App.—Eastland 1980), *sub nom., Ayco Development Corporation v. G.E.T. Service Company, aff'd in part and rev'd in part,* 616 S.W.2d 184 (Tex.1981), or *McCarty v. Halliburton Company,* 725 S.W.2d 817 (Tex.App.—Eastland 1987, writ ref'd. n.r.e.) have any controlling holdings on the issues in our case. In *McCarty,* neither lien claimant had notice of the assignment of any ownership interest in the leasehold estate. In *Energy Fund of America* there were no assignments but only a Joint Venture Agreement which apparently was never placed of record. Having concluded that Atkins was a mineral property owner and that the lien claimants were contractors, we overrule Point of Error No. One.

■ The next point of error contends that the trial court erred in holding that these lien claimants as subcontractors were not required to give notice to the mineral property owners that a lien was claimed where such subcontractors had notice of the ownership interest of such mineral property owners. This issue is controlled by our disposition of the first point. Having concluded that these lien claimants were not subcontractors but were contractors with Atkins, the only notice they were required to give was to Atkins even though they had notice that some interest in the leasehold estate had been assigned to the Appellants at the time their lien affidavits were filed. Point of Error No. Two is overruled.

The Appellants next assert that the lien affidavits are defective and fail to comply with the requirements of Section 56.022 of the Code. The lien affidavit must include:

(1) the name of the mineral property owner involved, if known;

(2) the name and mailing address of the claimant;

(3) the dates of performance or furnishing;

(4) a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved; and

(5) an itemized list of amounts claimed.

In view of our holding on the first two points of error, we hold that the lien claim-

ants were not required to list these Appellants as mineral property owners and it was not necessary to state that notice was given to these Appellants. They were not owners with whom the lien claimants had any contracts and they had no interest of record when the contracts for services and materials were made. Accordingly, there was no requirement that the lien claimants comply with the requirements of the Code Section 56.022(b). The complaints as to the liens of Don–Nan Pump & Supply, Inc., Smith Energy Services and Halliburton are not valid for those reasons. In reviewing all of the affidavits, both parties agree that the test is one of "substantial compliance" with the statutory requirements. *Texcalco, Inc. v. McMillan,* 524 S.W.2d 405 (Tex. Civ.App.—Eastland 1975, no writ). Furthermore, the lien statutes are to be liberally construed for the protection of materialmen. *University Savings and Loan Association v. Security Lumber Company,* 423 S.W.2d 287 (Tex.1968).

■ With regard to the issue of whether certain descriptions of the leasehold interest are sufficient, we base our decision upon the holdings in *Continental Supply Co. v. Gillespie,* 269 S.W. 859 (Tex.Civ.App.—Galveston 1925, no writ); *Youngstown Sheet and Tube Company v. Lucey Products Company,* 403 F.2d 135 (5th Cir.1968) and *In re Mid–America Petroleum, Inc.,* 83 B.R. 937 (Bankr.N.D.Tex.1988). In *Mid–America Petroleum,* the opinion states that the lien affidavit must contain "a description of the land or the lease." The Court concluded a reference to the operating unit or field was not sufficient. After examining the affidavits in question, we find them sufficient. As an example, the affidavit of R. A. Martin Pipe & Supply, Inc. states the oil and gas lease is dated March 15, 1985, and recorded in Volume 517, page 549, Oil & Gas Lease Records of Upton County, Texas with the names of the Lessee and Lessor and then a survey description. With that information the location of the premises can be identified. A Tommy White Supply Co., Inc. affidavit described the leasehold hold estate as located in SW/4 of SE/4 of Section 43, Block 39, T–5–S, T & P RR Co. Survey,

Upton County, Texas. Other White affidavits followed that same pattern. Likewise, United Pipe & Supply, Inc., Apache Services, Inc., Jim F. Webb, Inc., Lufkin Industries, Inc. and BK Tubulars, Inc. used survey descriptions to identify the leasehold interest. In each case there was a substantial compliance with the statutory requirement.

■ Complaint is made that the affidavits of White Supply do not disclose the dates of performance. In three instances the affidavits give a single date of performance and in five instances both a beginning date and ending date are given. This is a clear compliance with the Code Section 56.022(a)(3). What more is desired than the statements "on or about April 3, 1986" or "on or about April 9, 1986 through May 8, 1986"? Is that not sufficient for Appellants to know if the affidavits were filed within six months of the day the indebtedness accrued? We believe it is. A review of all the claims about defects in the affidavits indicate they are equally without merit. Point of Error No. Three is overruled.

The last three points of error all arise from events that occurred after the liens were filed and are not related to the validity of those liens. In 1987, the lien claimants entered into a trade creditors agreement. As provided for in that agreement, Atkins executed a conveyance assigning its interest in the Cowden Leases to the Trustee under the agreement. Atkins also executed a $1,000,000.00 production payment payable out of interests other than the Cowden Leases. It was also agreed between the parties that no judgment would be enforced against Atkins arising out of the debts incurred on the development of the Cowden Leases. As part of that agreement, the lien claimants empowered the trustee, the Appellee in this case, to pursue foreclosure of their liens and to make payments from the assets collected in their behalf. The aggregate debt was in excess of 3.3 millon dollars.

■ It is urged that the action of the lien claimants and the agreement they made with Atkins resulted in a discharge of their

debts, was an accord and satisfaction and that there was a merger of the estates and an extinguishment of the underlying debt and liens. An accord and satisfaction consists of a new contract, express or implied, in which the parties agree to the complete discharge of an existing obligation in a manner other than that agreed to originally. *Harris v. Rowe*, 593 S.W.2d 303 (Tex. 1979). It must be the mutual intent of the parties that payment of the new amount will amount to full satisfaction of the existing claim. *Dahlstrom Corporation v. Martin*, 582 S.W.2d 159 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd. n.r.e.). Absent such clear intent, the taking of some type of security for the payment of an existing obligation does not discharge the debtor from an action upon the first contract and does not discharge the lien arising therefrom. *Keystone Pipe & Supply Co. v. Wright*, 37 S.W.2d 227 (Tex.Civ. App.—Fort Worth 1931, no writ); *Bryan & Emery v. Frick–Reid Supply Co.*, 10 S.W.2d 1023 (Tex.Civ.App.—Amarillo 1928, no writ). The record in this case does not reflect any intention to extinguish or release the liens of record, in fact it reflects an intention that the Trustee was to pursue foreclosure of those liens. The lien creditors only agreed to dismiss any pending suit without prejudice, and to assign their indebtedness and liens to the Trust. We recognize that the assignment of a production payment could be the consideration for an accord and satisfaction or a payment to discharge the debt. *Dameris v. Homestead Bank*, 495 S.W.2d 52 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). But, in this case, the agreement establishes, by its terms, there was no accord and satisfaction and the Trustee was to pursue foreclosure of the claimants liens upon the leasehold estate.

■ Likewise, it is urged that the transfer of the Atkins interest in the Cowden Leases without a designation as to the amount of credit to be applied to Atkins' debt for that interest resulted in a discharge of its obligation to the lien creditors. First, we note that the amount of proceeds credited to Atkins interest, between December 1986 and the execution of the lien creditors agreement with Atkins, was credited to the indebtedness owed to the lien creditors. Appellants seek to use the same rationale applied to personal property in *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex.1982) to a mineral working interest in this case. The decision in *Tanenbaum* was controlled by a provision in the Texas Business and Commerce Code which dealt specifically with collateral. In this case, Atkins entered into an agreement which reserved the right to foreclose on existing liens and thus knew that its debt was not discharged by assigning its mineral interest to the Trustee for the lien creditors. If Appellants are entitled to further credit or an offset for the value of the assigned interest in the Cowden Leases, such would be an affirmative defense and at the summary judgment proceedings the Appellants were required to present some evidence to raise a fact issue as to the amount of the credit or offset. That was not done. Certainly, if these liens are eventually foreclosed, the Appellants will at the time of the sale be entitled to a credit for the value of the oil runs credited to the Atkins interest between the time of the prior credit and the time of the sale.

■ Finally, the argument is made that the assignment of the Atkins mineral interest and the lien creditors rights in the Trustee resulted in a merger of estates and an extinguishment of the debt and liens. This issue is controlled by the intention of the lien owner as he has the election to keep the lien alive and it will be presumed that he intended whatever was to his advantage. 50 Tex.Jur.3d Liens, § 28 (1986). In our case, the provision in the agreement retaining the right to foreclose the liens establishes the intent not to merge the estates. The conveyance executed by Atkins to the Trustee on June 5, 1987 specifically provides "it is the intention of the parties hereto that the interests assigned herein shall not merge with interests in the Indebtedness or any liens that have previously or may hereafter be assigned to Grantee...." Points of Error Nos. Four, Five and Six are overruled.

The judgment of the trial court is affirmed.