COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ACME ENERGY SERVICES, INC. d/b/a §
BIG DOG DRILLING,                                              No. 08-17-00145-CV

                                    §

            Appellant,                                          Appeal from the

                                    §

v.                                                              109th District Court

                                    §

SANDRA H. STALEY, INDIVIDUALLY                  of Winkler County, Texas
AS INDEPENDENT EXECUTRIX OF          §
THE ESTATE OF GEORGE G. STALEY,                       (TC# 15,681–B)
DECEASED, AND AS TRUSTEE OF          §
THE TAX FREE TRUST FOR SANDRA
H. STALEY,                          §

            Appellee.                §

## **O P I N I O N**

Big Dog Drilling appeals the judgment of the trial court holding its lien on an oil-and-gas

lease had been extinguished by a prior agreement.  In Issues One, Two, and Three, Big Dog

contends the trial court (1) erred by holding there is no debt owed to Big Dog for the Invoices; (2)

erred in finding that no debt is owed on the Invoices; and (3) erred in finding the lien claimed by

Big Dog had been extinguished.   In Issues Four, Five, and Six, Big Dog contends the trial court

(4) erred in holding that because the lien had been extinguished, Big Dog could not prevail on its

claims; (5) erred in holding it would not be equitable and just for the trial court to award Big Dog

attorney's fees; and (6) erred in holding Big Dog is not entitled to recover attorney's fees.[1]  We affirm.

## BACKGROUND

This consolidated case is about an oil-and-gas contractor who went belly up and the subcontractors who are seeking to satisfy invoiced obligations not fully paid in the contractor's bankruptcy.  The somewhat convoluted facts are as follows.  In 2008, Endeavor Energy Resources, L.P, Big Dog Drilling, and Rig Movers Express performed oil-and-gas-related work on a well known as the A.G. Hill No. 1 Well.  The well was located on mineral leases in Winkler County, Texas, known as the Section 6 Leases, and were at the time one-hundred percent owned by Heritage Consolidated Services and Heritage Standard Corporation.  Heritage contracted with Lakehills Productions to provide materials and services on the A.G. Hill No. 1 Well, and Lakehills hired Endeavor, Big Dog, and Rig Movers as subcontractors.  The Subcontractors performed the work as required and invoiced Lakehills for payment.  But Heritage had stopped making payments to Lakehills, and Lakehills in turn did not pay the Subcontractors for their work.  On December 23, 2008, the Subcontractors recorded statutory mineral property liens against Heritage and its ownership in the leases and the well, collectively covering $1,178,294.71 in amounts invoiced to Lakehills.[2]  In July 2009, having still not received payment on the invoices, the

---

[1] In Big Dog's reply brief, for the first time, it contends a joint operating agreement entered into between Staley and Heritage provided for several liability, and therefore Staley owes his proportionate share of the cost of developing and operating the contract area.

[2] The lien affidavit reads, in relevant part:

> Claimant having furnished and hauled materials, machinery or supplies and/or performed labor, work and services for and in connection with the drilling, operating, completing, maintaining, equipping, or repairing of one or more oil and/or gas wells situated on the oil, gas, and mineral leasehold estate(s) hereinafter described, makes this Affidavit pursuant to § 56.001 *et seq* of the TEXAS PROPERTY CODE for the purpose of perfecting a lien upon the oil, gas, and mineral

2

Subcontractors filed separate suits to foreclose the liens, order a judicial sale of the well and the leases, and find Heritage jointly and severally liable for paying the invoiced amounts.

But before the Subcontractors filed their foreclosure suits, a separate dispute had arisen over an agreement involving the Section 6 Leases between Heritage and three other parties: Jeff Ragland, Dennis Rosini, and George G. Staley. Staley was a well-regarded geologist who had been hired by Heritage to overcome operational problems with the well and make it produce in

leasehold(s) described, including all property thereon as provided in § 56.003 of the TEXAS PROPERTY CODE to secure the amount of Claimant's claim.

Heritage Standard Corporation whose address is 2911 Turtle Creek Blvd, Ste. 850, Dallas 75219, and/or Heritage Consolidated, LLC whose address is 2911 Turtle Creek Blvd, Ste. 850, Dallas 75219, is the owner or reputed owner of an interest in the following oil and gas lease(s) and/or oil, gas, and mineral leases(s) [sic]:

.          .          .

[LEGAL DESCRIPTIONS OF LEASES INCLUDING SUBJECT PROPERTY]

Under a contract with Lakehills Production, Inc., which was acting as a contract operator or agent for Heritage Standard Corporation, Claimant did furnish materials, machinery, or supplies and/or perform labor and services on or about the dates from May 12, 2008 through July 18, 2008, for and in connection with the drilling, operating, completing, maintaining or repairing of one or more oil and/or gas wells owned or reputedly owned and/or operated by Heritage Standard Corporation, said well(s) being known as the A.G. Hill No. 1 Well located in Section 6, Block 74, PSL Survey, Winkler County, Texas.

.          .          .

Claimant timely served written notice that the lien is claimed on the interests of Heritage Standard Corporation and Heritage Consolidated, LLC.

The true and correct amount claimed by Claimant is Eight Hundred Sixty-two Thousand Seven Hundred Twenty-five and 85/100 Dollars, ($862,725.85), and said amount is just and reasonable, due and unpaid, and all just and lawful payments, offsets, and credits have been allowed. . . . This lien claim for the amount stated above is upon the oil, gas, and mineral leasehold(s), any well or wells locate [sic] thereon, with all personal property, equipment, buildings, appurtenances, pipelines, right-of-ways, etc. located thereon and used or obtained in connection therewith and other items of property . . . .

.          .          .

Executed the 23rd day of December, 2008.

3

paying quantities, for which he would receive an interest. In June 2009, as part of a settlement agreement, Heritage assigned working interests in the leases and well to the parties, with Staley receiving a 17.75 percent interest and Rosini and Ragland each receiving respective one-percent interests. Rosini and Ragland subsequently assigned their one-percent interests to Staley, leaving Staley with a 19.75 percent interest in the Heritage leases. Because the liens had been filed before these assignments were made, Staley took the assignments subject to the liens, but Staley never personally assumed an obligation to pay the invoices.

The Subcontractors' suits to foreclose their liens against Heritage proceeded, and Staley and the others were added as Heritage's successors in interest. More than a year later in September 2010, while those suits were still pending, Heritage filed for Chapter 11 bankruptcy. The state trial court severed out the Subcontractors claims against Heritage to allow them to continue to pursue their claims against the remaining defendants in state court.

Now proceeding in bankruptcy court, the Subcontractors filed proofs of claim to recover the invoiced amounts from Heritage. They also jointly filed an adversary proceeding in the bankruptcy court regarding the priority, and validity, of their respective debts and liens. Heritage moved for summary judgment in the adversary proceeding, claiming it did not owe the invoiced amounts and that the Subcontractors' liens were invalid. The bankruptcy court agreed and granted summary judgment in favor of Heritage on all claims, and its decision was affirmed on appeal to the federal district court.

The Fifth Circuit reversed, finding a fact question existed regarding whether Heritage owed the debt to the Subcontractors, and the case was remanded to the bankruptcy court for a determination of the validity of the debts. In June 2015, Heritage and the Subcontractors reached

4

a settlement agreement to dismiss the adversary proceedings. This agreement provided that Heritage would acknowledge its liability for the debts, and the total amount owed to the Subcontractors would be reduced to a stipulated amount of $1,493,628.21, which represented the original invoiced amounts plus fifty percent of their prepetition interest and attorney's fees. It also provided that $300,000 of the Stipulated Amount would be an allowed secured claim in Heritage's bankruptcy, thus ensuring its payment, and the remaining $1,193,628.21 owed would be classified as a general unsecured claim. Paragraph seven of the agreement provided as follows:

> 7.      Upon approval of this Stipulation, the parties agree that a dismissal with prejudice shall be filed in the Adversary Proceeding, with each party bearing their own costs and attorneys' fees and further agree that, other than the continued indebtedness of the Stipulated Amount under the terms of this Stipulation, Heritage and the Trustee on the one hand, and Endeavor and Acme on the other, release each other and their respective counsel, agents, subsidiaries, and affiliates from all claims, causes of action, rights, demands, actions, costs, judgments, expenses, damages and liabilities whatsoever, at law or in equity, whether known or unknown, that arise out of or relate to the facts and circumstances made the basis of the Adversary Proceeding, or that were or could have been asserted in the Adversary Proceeding and/or the Proofs of Claim. In that regard, Endeavor and Acme acknowledge and agree that their recovery hereunder shall be in full and final satisfaction of their putative claims and liens against any interests of Heritage and/or the Trust in Section 6 Assets, and they shall not assert or enforce any claims and liens against any such interests, including, without limitation, any interest currently attributed to Trius in Section 6 Assets and/or recovered by the Trust through enforcement of claims against Trius in Section 6 Assets. This release is not intended to release any claims or liens owned or held by Endeavor or Acme against George Staley, J.R. Operating Company, Dennis Rosini and their successors and assigns.

The bankruptcy court approved this settlement in August 2015, and the Subcontractors received payment from Heritage in accordance with the Stipulation.

The Subcontractors then returned to state court to attempt to foreclose on the interest held by Staley, who by this point had passed away and had left the interest to his wife, Sandra H. Staley, and to recover attorney's fees. The trial court consolidated the Subcontractors' suits and a bench

5

trial was held in March 2017 on partially stipulated facts. The parties stipulated that Staley was not personally liable for the debts on the invoiced amounts and that the Subcontractors were only seeking a judgment to foreclose the liens as to Staley's interest in the well. At trial, Staley asserted the liens had been extinguished because the underlying debt had been extinguished—that the Subcontractors had expressly released the underlying debt of the invoiced amounts owed by Heritage in exchange for a priority interest in the bankruptcy proceeding and an allowance of the remaining balance as an unsecured claim, which Heritage had otherwise contested it owed. Staley contended the only claim reserved against her and her late husband's estate by the release was a claim for unjust enrichment, and because no lien existed against Staley the line reserving a lien against him was without effect. The Subcontractors in turn argued the Stipulation was not a release of the underlying debt of the invoiced amounts but merely an agreement to priority status in the bankruptcy. At trial, the Subcontractors orally agreed to withdraw their claim for unjust enrichment, which was their only claim against Staley personally. The trial court held in favor of Staley, finding no debt was owed to the Subcontractors on the invoiced amounts due to the Stipulation Agreement in the bankruptcy. Because no debt was owed to the Subcontractors on the invoiced amounts, the court concluded the lien was extinguished and the plaintiffs could not succeed on their claims and foreclose on Staley's interest. It also concluded that because the Subcontractors could not succeed on their claims, they were not entitled to attorney's fees. This appeal followed.

## DISCUSSION

### The Underlying Debt and the Stipulation

In Issues One, Two, and Three, Big Dog contends the trial court erred in concluding the

6

debts of the Invoiced Amounts were no longer owed because the underlying debt and lien were extinguished by the bankruptcy stipulation.

### Standard of Review

Big Dog frames the first three issues as legal and factual sufficiency challenges to the trial court's findings on the effect of the settlement agreement on the underlying debt and its lien on the mineral lease. But the construction of an unambiguous contract is a question of law, which is reviewed *de novo* on appeal. *Anderson Energy Corporation v. Dominion Oklahoma Texas Exploration & Production, Inc.*, 469 S.W.3d 280, 287 (Tex.App.—San Antonio 2015, no pet.)(*citing MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999)). A contract is unambiguous if, as worded, it can be given a clear and definite legal meaning so that it can be construed as a matter of law. *Id.*, (*citing Gilbert Tex. Contr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010)); *see also Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."). A contract is ambiguous if it is subject to more than one reasonable interpretation after applying the relevant rules of construction. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). We construe Big Dog's contention to be an attack on the trial court's construction of an unambiguous contract. A reviewing court's primary duty when construing an unambiguous contract is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Each part of the contract should be given effect. *Id.*

### Applicable Law

The purpose of Section 56 of the Property Code is not only to give a lien to a party who

furnishes materials, supplies, or labor, but also to put third parties who may want to acquire an interest in the properties at issue on notice of a claim for debt and a lien to secure that debt. *Simon v. Post Oak Oil Co.*, 153 S.W.2d 1002, 1005 (Tex.App.—Fort Worth 1941), *rev'd on other grounds*, *Oil Field Salvage Co. v. Simon*, 168 S.W.2d 848 (Tex. 1943). When a party acquires a percentage interest in an oil and gas lease after the interest has been burdened with a materialman's lien, he takes that interest subject to the lien, and the lien can be foreclosed against his interest even after the prior interest holder's lien has been foreclosed upon in a separate action provided a deficiency remains after the prior foreclosure proceeding. *Bancroft v. Welch*, 258 S.W.2d 406, 408 (Tex.App.—Eastland 1953, no pet.)(owner of a one-tenth interest in an oil and gas lease, who had acquired his interest after attachment of a materialman's lien, was not made a party to a foreclosure proceeding against the original owner where a recovery was made, but the lien was allowed to subsequently be enforced against the one-tenth owner despite the recovery because a deficiency existed). To successfully foreclose on a materialman's lien, the lienholder must prove that it performed the labor or furnished the materials and that the debt is valid. *Crawford Services, Inc. v. Skillman Intern. Firm., L.L.C.*, 444 S.W.3d 265, 268 (Tex.App.—Dallas 2014, pet. dism'd). No lien can exist to secure payment of items that have been paid, and the satisfaction of a debt automatically extinguishes a lien securing that debt. *Jarvis v. K & E Re One, LLC*, 390 S.W.3d 631, 642 (Tex.App.—Dallas 2012, no pet.)(*citing Perkins v. Sterne*, 23 Tex. 561, 563 (1859)); *Clayton v. Bridgeport Mach. Co.*, 33 S.W.2d 787, 789 (Tex.Civ.App.—Eastland 1930, writ ref'd).

An accord and satisfaction is a new contract, express or implied, in which the parties agree to the complete discharge of an existing obligation in a manner other than originally agreed upon. *Trevor Rees-Jones, Tr. For Atkins Petroleum Corp. v. Trevor Rees-Jones, Tr. for Apache Services,*

8

*Inc.*, 799 S.W.2d 463, 468 (Tex.App.—El Paso 1990, writ denied)(*citing Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979)). The parties must mutually intend that payment of the new amount will amount to full satisfaction of the existing claim. *Id.*, (*citing Dahlstrom Corporation v. Martin*, 582 S.W.2d 159, 164 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.)). Absent such clear intent, the taking of some type of security for the payment of an existing obligation does not discharge the debtor from an action to recover under the original contract and does not discharge the lien arising from it. *Id.*, (*citing Keystone Pipe & Supply Co. v. Wright*, 37 S.W.2d 227, 230 (Tex.Civ.App.—Fort Worth 1931, writ dism'd)). Similarly, a release is a writing providing that an obligation owed to one party is discharged immediately or on the occurrence of a condition. *In re OSG Ship Mgmt., Inc.*, 514 S.W.3d 331, 344 (Tex.App.— Houston [14th Dist.] 2016, no pet.). A valid release extinguishes a claim and bars recovery on the released matter. *Id.*

In *Atkins Petroleum Corp.*, our Court faced similar arguments to those raised in the present case. *Atkins Petroleum Corp.*, 799 S.W.2d at 463. There, appellants appealed a summary judgment entered for lien claimants against appellants' mineral leases, the liens having been filed to secure services rendered and equipment furnished in the drilling of oil-and-gas wells. *Id.*, at 464. Atkins Petroleum Corporation, the lease operator, owned a one-hundred percent working interest in the oil-and-gas leases at the time it contracted with the lien claimants. *Id.*, at 465. After contracting with the lien claimants, Atkins assigned fractional ownership interests to appellants pursuant to prior letter agreements. *Id.* Subsequently, Atkins stopped making timely payments for the work done and the lien claimants filed their lien affidavits and attempted to foreclose on the liens. *Id.* Atkins entered a settlement agreement with the lien claimants in

9

which Atkins assigned its remaining interest in the leases to the lien claimants and provided for a cash payment in exchange for the lien claimants not enforcing judgment against Atkins for the debts it owed for the work performed. *Id*., at 467. A separate suit was then filed by the lien claimants to foreclose the liens as to the interests held by appellants for the remaining balance of the debt. *Id*., at 467. The appellants argued the trial court improperly granted summary judgment against them because they were only partial successors-in-interest and the settlement agreement between the lien claimants and Atkins was an accord and satisfaction that extinguished the underlying debt and liens. *Id*., at 467–68. In reaching our decision, we emphasized the well-established rule that it must be the mutual intent of the parties that payment of a new amount will amount to a full satisfaction of the existing claim. *Id*., at 468. We held the record did not reflect any intention to extinguish or release the liens of record because the agreement itself stated the lien creditors only obligated themselves to dismiss any pending suit against Atkins without prejudice and to assign their indebtedness and liens to a trust, with the intent that the trustee would pursue foreclosure of the liens. *Id*., at 468. Because the debt and liens were expressly reserved with the intent they be pursued by the trustee, we held it could not have been the mutual intent of the parties that the underlying debt be extinguished in exchange for the security payment and assignment by Atkins. *Id*. We also acknowledged that while a payment can be consideration for an accord and satisfaction to discharge an existing debt, the agreement established, by its terms, that there was no accord and satisfaction. *Id*.

### *Analysis*

Here, Big Dog asserts the Stipulation only extinguished Heritage's personal liability to pay the debt but left the underlying debt of the Invoiced Amounts intact against the property. Citing

*Atkins*, Big Dog contends the Stipulation did not contain express language releasing the lien or underlying indebtedness, and therefore the debts could not have been extinguished. Alternatively, Big Dog contends the language in paragraph seven specifically reserving their "claims and liens" against George Staley establishes that it was not the mutual intent of the parties to release the underlying debt. Big Dog also points to a line in the Stipulation reserving "the continuing indebtedness of the Stipulated Amount," to show the debt of the Invoiced Amounts was not intended to be extinguished.

The present case is distinguishable from *Atkins*. In *Atkins*, the agreement reached by the corporation and lien claimants provided that a judgment would not be enforced against the corporation, dismissed the pending suit without prejudice, and expressly stated ownership of the debt and liens would be transferred to a trustee who would seek to foreclose the liens. *Atkins Petroleum Corp.*, 799 S.W.2d at 467. But here, the language of the Stipulation expressly releases not only the underlying debt owed by Heritage but the lien against Heritage as well. The Stipulation states Big Dog's "recovery"—Heritage's acknowledgment of the debt's validity, the priority status in bankruptcy of part of the Stipulated Amount, and the rest of the Stipulated Amount as an unsecured claim—would "be in full and final satisfaction of their putative claims and liens against any interests of Heritage and/or the Trust in [Section 6 leases and A.G. Hill No. 1 Well] . . . ." The Stipulation also stated each side released the other from all claims whatsoever "that arise out of or relate to the facts and circumstances made the basis of the Adversary Proceeding, or that were or could have been asserted in the Adversary Proceeding and/or the Proofs of Claim." This is the type of language we acknowledged in *Atkins* would demonstrate a mutual intent to discharge a debt by accord and satisfaction. *Id.*, at 468. While Big Dog contends the

11

language reserving "claims and liens" held against Staley preserves the debt and lien, the only lien on record is against Heritage for the debt of the Invoiced Amounts, which was specifically reduced to the Stipulated Amount by the terms of the Stipulation. If Staley had received his interest in the well prior to the perfection of the mechanic's lien, and if the lien affidavit had been perfected as to *both* Heritage and Staley, then perhaps Big Dog could argue severance and have reserved a right to proceed separately against Staley's interest after settling with Heritage in bankruptcy court. Instead, the Stipulated Amount was given partial priority in the bankruptcy, thus ensuring payment by Heritage of at least some part of that amount, in exchange for "full and final satisfaction" of their claims and liens against Heritage. Thus, by its terms, the Stipulation was an accord and satisfaction because it was the mutual intent of the parties "that payment of the new amount will amount to full satisfaction of the existing claim." *Adkins Petroleum Corp.,* 799 S.W.2d at 468.

Big Dog contends that our decision in *Atkins* requires us to presume the lien holder did whatever was to the lien holder's advantage, and it would not be to Big Dog's advantage to release the entire debt for only a fraction of what it was owed. But this is a misreading of *Atkins*. There, we held the issue of whether a merger of the estates extinguished the debt and liens was controlled by the intention of the lienholder, as he has the election to keep it alive, and in case of ambiguity as to his intent it would be presumed he intended whatever was to his advantage. *See Atkins Petroleum Corp.*, 799 S.W.2d at 468 (*citing* 50 Tex.Jur.3d Liens, § 28 (1986)). The issue of merger is not contended here.[3]

---

[3] As to Big Dog's contention the Stipulation was without advantage for it, without speculating on the motives of Big Dog, we note two significant benefits accrued to it from the Stipulation Agreement: (1) Heritage acknowledged its liability to pay the debt, an issue that had been litigated for six years and was still being contested at the time of the negotiated agreement; and (2) Big Dog received a priority payment in the bankruptcy of part of the Stipulated Amount and the remainder was given status as an unsecured claim.

Big Dog further asserts their lien rights could not be affected by a subsequent agreement, citing the Fifth Circuit's holding in the case involving Heritage's bankruptcy, where that court interpreted Texas law and our holding in *Atkins*. Big Dog asserts the court there held that a subsequent agreement cannot alter or change a lien holder's rights, and therefore nothing in the Stipulation could affect Big Dog's lien. This is, however, a misreading of the Fifth Circuit's reasoning. The passage cited by Big Dog from that case dealt with whether the Subcontractors' status as subcontractors could be affected by a subsequent agreement between the main contractor and other interest holders, a point that was relevant to their ability to enforce a lien against Heritage under Section 56 of the Property Code. *In re Heritage Consol., L.L.C.*, 765 F.3d 507, 515–16 (5th Cir. 2014). The Fifth Circuit held the subsequent agreement did not affect their status as subcontractors, quoting our decision in *Atkins* that the lien claimants' status cannot be converted "by another contract to which they are not privy." *Id.*, at 516 (*quoting Atkins Petroleum Corp.*, 799 S.W.2d at 465–66). By contrast, Big Dog was a party to the agreement here, and its status as a lien holder can be changed by an accord and satisfaction because Texas law provides that satisfaction of a debt automatically extinguishes a lien securing that debt. *Jarvis*, 390 S.W.3d at 642; *Clayton*, 33 S.W.2d at 789.

Finally, Big Dog also asserts liens pass through bankruptcy unaffected by discharge, and therefore, any agreement between it and Heritage in the bankruptcy could not have affected the lien. Indeed, liens do pass through bankruptcy under certain circumstances, as when they are not provided for and paid in full under a confirmed plan or are not extinguished by operation of Section 506(d) of the Bankruptcy Code. *In re Kleibrink*, 346 B.R. 734, 748 (Bankr. N.D. Tex. 2006), *aff'd*, 3:07-CV-0088-K, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), *aff'd*, 621 F.3d 370 (5th

13

Cir. 2010). But here, as we have already noted, the Stipulation provided that the acceptance of liability by Heritage and the granting of the priority status of part of the Stipulated Amount would "be in full and final satisfaction of their putative claims and liens against any interests of Heritage . . . ." A secured-lien holder in bankruptcy can consent to the discharge of his lien via agreement and secured-lien holders commonly do so. *Matter of Penrod*, 50 F.3d 459, 462–63 (7th Cir. 1995)("[S]ecured creditors commonly give up their preexisting liens for other interests in the reorganized firm.").

Accordingly, because Big Dog's debt was extinguished via the Stipulation, the trial court did not err in concluding Big Dog could not foreclose on its putative lien against Staley's interest. Issues One, Two, and Three are overruled.

### Several Liability

In its reply brief, Big Dog raises a new issue in which it contends a joint operating agreement entered into between Staley and Heritage provided for several liability, and therefore Staley owes his proportionate share of the cost of developing and operating the contract area. A reply brief may not be utilized to present issues to the court that were not presented in the original brief. *Fox v. City of El Paso*, 292 S.W.3d 247, 249 (Tex.App.—El Paso 2009, pet. denied)(*citing* TEX.R.APP.P. 38.3). Accordingly, this issue is overruled.

### Attorney's Fees Under Section 53.146

In Issues Four, Five, and Six, Big Dog contends the trial court erred by refusing to award it reasonable attorney's fees. The trial court concluded, "It would not be equitable and just for the Court to award attorneys' fees to Plaintiff when Plaintiff has failed to prevail on its claims." Section 53.156 of the Texas Property Code requires a court to award costs and attorney's fees in

an action to foreclose a lien as it deems "are equitable and just."  TEX.PROP.CODE ANN. § 53.156.

Awarding fees in an equitable and just way is a matter squarely within the trial court's discretion.

*Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).   Moreover, the statute by its terms makes the

award of attorney's fees discretionary and not automatic, even to a prevailing party.   *World Help*

*v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 685 (Tex.App.—Fort Worth 1998, pet. denied); *Texas*

*Const. Associates, Inc. v. Balli*, 558 S.W.2d 513, 522 (Tex.Civ.App.—Corpus Christi 1977, no

pet.).   Accordingly, the trial court did not err in denying Big Dog attorney's fees.   Big Dog's

fourth, fifth, and sixth issues are overruled.

## CONCLUSION

Having overruled Issues One through Six, the judgment of the trial court is affirmed.


February 22, 2019

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Palafox, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

15